JORMAN *v.* STATE OF INDIANA.

[No. 25,485. Filed December 4, 1928.]

*Ira M. Holmes,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

MARTIN, C. J.—Appellant, with three others, was charged by an affidavit in two counts with conspiring to commit a felony under §641, ch. 169, Acts 1905 p. 584, 742, §2882 Burns 1926,[1] and with transporting intoxicating liquor in an automobile under §7, ch. 48, Acts 1925 p. 144, §2720 Burns 1926. A separate trial of appellant, by the court, resulted in a finding of guilty on the conspiracy count and a judgment of $500 fine and imprisonment in the Indiana State Prison for a term of from two to fourteen years. Subsequently, a new trial was granted appellant, which resulted in the same finding and judgment. The only error relied upon is the overruling of appellant's motion for a (second) new trial,

---

[1] "Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars nor more than five thousand dollars, and imprisoned in the state prison not less than two years nor more than fourteen years."

in which it is alleged that the finding of the court is not sustained by sufficient evidence and is contrary to law.[2]

The count upon which appellant was convicted charged that he and his codefendants, Charles Henry, Henry Elliott, Mary Bell Rhea and Clifford Castetter, did "unlawfully, knowingly and feloniously unite, combine, conspire, confederate and agree to and with each other for the object and purpose and with the unlawful and felonious intent to then and there unlawfully and knowingly and feloniously transport intoxicating liquor in an automobile." The evidence discloses that appellant employed Elliott and Henry to go in appellant's Cadillac automobile from Indianapolis to Chicago, Illinois, and get a load of whisky from Tilly Cosgrove. (Henry, whose true name was Charles Henry Churchill, and who had been convicted for different crimes, had made previous trips to Chicago with appellant to get liquor.) Appellant paid Henry and Elliott for this work and provided them with expense money, with rifles and ammunition "to guard against hi-jackers" and a "bundle of money" with which to pay for the liquor. He gave them an order to get gasoline which was charged to "Jack" (appellant) and he directed what they were to do.

The car was loaded with twenty-eight five-gallon cans of liquor at Tilly's place, 115th Street and Cottage Grove Avenue, Chicago, and the return trip was started by Henry, Elliott and Mary Bell Rhea, who was described as Henry's wife. Tilly, in an automobile acting as

---

[2]Another ground alleged in the motion for a new trial, but not discussed in appellant's brief and, therefore, waived, was that the "defendant was not arraigned in the cause and the issues were not properly joined." The record does not show that the appellant was arraigned or that he entered a plea before his first trial. The ground just set out was also included in the first motion for a new trial which was granted.

The record shows that, before the second trial, "defendant Jorman by counsel now waives arraignment and enters a plea of not guilty."

escort, led them out of Chicago to the Illinois-Indiana state line. On the road, Elliott and Henry drank some of the liquor. Henry drank about "half a glass" and it made him drunk. Henry was driving and, near Bass Lake, they "hit a fence and busted the top off the car." Clifford Castetter, also employed by appellant, was directed by appellant to take a Studebaker car and meet the disabled Cadillac car near Logansport. (The Studebaker car was owned by appellant, but he had transferred the title to Castetter's name to avoid liability for damages in case of accident.) The liquor, the rifles and the passengers were transferred into the Studebaker car and it proceeded to Indianapolis. At the Marion-county line, the car "hit it up" about fifty miles per hour. Two deputy sheriffs gave chase, Henry and Elliott increased their speed to sixty-four miles an hour, the deputies shot one of their tires, stopped the car, and arrested Henry for speeding. Liquor was leaking out of the car, the deputy sheriffs found the twenty-eight cans of liquor and took possession of it. This liquor was variously described by the witnesses as "moonshine whisky," "alcohol" and "sugar alcohol." A federal prohibition officer who examined it testified that it tested "170 proof" (pure alcohol being "188 proof"), that it was 85 per cent. alcohol by volume, and "was fit for beverage purposes—but plenty strong."

Appellant contends that since he formulated the plan and made all of the arrangements in Indianapolis and in Chicago for the transportation of the liquor, ▮ and employed the codefendants Henry, Elliott and Castetter as agents to assist him in carrying out his designs and in the execution of the criminal act, directing each of them what to do, that he cannot be guilty of criminal conspiracy. In other words, he contends that one may not conspire with his employee to commit a felony. We readily agree with appellant that

one person cannot conspire with himself, 12 C. J. 542, and that to constitute a conspiracy there must be a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose by criminal or unlawful means, *Brewster* v. *State* (1917), 186 Ind. 369, 115 N. E. 54. But the fact that one co-conspirator bears the relation of a paid employee to another co-conspirator does not divest him of his identity as a person, does not preclude his participation in the conspiracy and does not avoid criminal responsibility for his acts. The question of the guilt of one charged with criminal conspiracy is decided by determining whether or not he did "unite or combine with any other person or persons for the purpose of committing a felony." If he did so unite and combine, it matters not whether his criminal act was performed *gratis* or for hire, or whether he was to give pay to or receive pay from the other persons united with him. *Hardy* v. *State* (1919), 256 Fed. 284, holds that:

"One's participation in a criminal conspiracy is not excused by showing that the service he was employed to render required or called for such participation."

And in *Hyde* v. *United States* (1911), 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A 614, it was said:

"The fact that a salary was paid by one to another would not preclude a conspiracy between them— and it was certainly not inconsistent with a full and active participation in the scheme."

Appellant cites *McKee* v. *State* (1887), 111 Ind. 378, 12 N. E. 510, to support his contention on appeal that, while he might properly have been found guilty of the crime charged in the second count, he could not properly be found guilty of the conspiracy charged on the first

count. *McKee* v. *State, supra,* correctly holds that, "one who employs an agent to assist in the execution of a criminal act, is equally guilty of the acts of the persons employed as if he had himself performed them" but it does not hold that because a principal may commit a crime by the acts of his agents that he cannot be guilty of entering into a conspiracy to commit a felony with such agents. The evidence in this case is not only sufficient to sustain the finding of guilty on the conspiracy charge, but is sufficient to have sustained a finding of guilty on the transportation count. The fact that the court did not find appellant guilty of transporting intoxicating liquor in an automobile has no effect on the finding and judgment on the charge of criminal conspiracy.

Judgment affirmed.