KLEIHEGE *v.* STATE OF INDIANA.

[No. 25,675.   Filed February 16, 1934.]

William J. McAleer, Francis J. Dorsey, Gerald A. Gillett, James J. Clark, and William J. Whinery, for appellant.

James M. Ogden, Attorney-General, George W. Huffsmith and E. Burke Walker, Deputies Attorney-General, for the State.

MYERS, J.—Appellant, with five other persons, was, by affidavit, charged with the crime commonly known as a conspiracy to commit a felony. Sec. 641, Acts 1905, p. 584, 742, §2882, Burns 1926, §10-1101, Burns Ind. Stat. Ann. 1933, §2909, Baldwin's Ind. Ann. Stat. 1934. The purposed felony sought to be charged is defined by §5, Acts 1927, p. 122, §2442.3, Burns Supp. 1929, §10-305, Burns Ind. Stat. Ann. 1933, §2437, Baldwin's Ind. Ann. Stat. 1934. Appellant had a separate trial before a jury which resulted in his conviction. Judgment and sentence followed, from which he has appealed to this court, assigning as errors the action of the trial court (1) in overruling his motion in arrest of judgment; (2) in overruling his motion for a new trial; and (3) in overruling his petition to stay judgment and sentence on the ground that he alone had been convicted.

Appellant, to support his motion in arrest of judgment, relies upon insufficient facts in the affidavit to

state a public offense. He contends that the single-count affidavit attempts to charge four separate and distinct offenses as the purposed felony, in that it fails to charge that such felony was committed by the same person at the same time and as a part of the same transaction, subjecting the offender to the same punishment. Hence it fails to comply with Art. 1, §13, Indiana Constitution, for the reason that the "nature and cause of the accusation is not charged in direct and unmistakeable terms." Citing, *Hinshaw* v. *State* (1918), 188 Ind. 147, 122 N. E. 418. That was a conspiracy case and the court had under consideration a motion to quash each count of the indictment. Both counts were held insufficient to withstand a motion to quash for the reason that the facts constituting the purposed felony, which was the object of the conspiracy, were not charged as specifically as the law requires to put the defendant on trial for the felony.

In the instant case no motion to quash was made. The motion in arrest asserts insufficient facts, but appellant attempts to sustain it on the theory that the affidavit is bad for duplicity. A pleading, although bad for duplicity, it not subject to a motion in arrest of judgment after verdict. But if it were, it would be unavailing to appellant in the instant case.

That part of the affidavit in question reads as follows: "and with each other for the object and purpose and with the unlawful and felonious intent to then and there unlawfully, feloniously, wilfully and maliciously prepare, place, arrange, set and distribute and to aid, counsel, and procure the preparing, placing, arranging, setting and distributing of certain combustible material, explosive substance, instrument and liquid in and about a certain theatre building then and there situate, with the unlawful and felonious intent then and there and thereby to set fire to,

burn, blow up and destroy said theatre building, and to have the said theatre building set fire to, burned, blown up and destroyed." This affidavit follows closely the language of the statute, §2442.3, *supra,* which defines the purposed felony intended to be charged as follows: "Whoever wilfully and maliciously . . . aids, counsels, or procures the preparing, placing, arranging, setting or distributing of any combustible material, explosive substance, instrument, liquid . . . in or about any house, building or other structure . . . with the intent to set fire to, burn, blow up, or destroy any such property, or have the same set fire to, burned, blown up or destroyed, such property being the property of another; . . . shall be guilty of a felony and shall, upon conviction thereof, be imprisoned in the state prison for not less than one nor more than three years." This statute designates particular acts, the doing of any one of which constitutes a felony. They are all punishable alike. They may be pleaded singly or conjunctively in a single count of an indictment without offending the rule against duplicity. *Farr* v. *State* (1926), 198 Ind. 302, 304, 153 N. E. 476, and cases there cited; *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403; *Lennard* v. *State* (1921), 191 Ind. 371, 132 N. E. 677.

Appellant, further supporting his motion in arrest, insists that chapter 44, and especially §5, Acts 1927, p. 122, is unconstitutional and void for the reason that it is in direct violation of Art. 4, §19, Constitution of Indiana, which provides, in part, that: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." He insists that ch. 44, which includes §5, is limited by its title to an act concerning the crime of arson only, and that the facts in the affidavit are insufficient to charge arson. The act is

entitled: "AN ACT concerning the crime of arson and certain other crimes connected with the destruction or attempted destruction of property by fire or explosion, prescribing penalties therefor, and repealing all laws and parts of laws in conflict therewith." The substance of §5 defining the purposed felony charged in the instant case is set out above and is not subject to the limited construction that appellant would have us give it or the seven sections composing the chapter. The title of the act may be subject to criticism, but when carefully read, the conclusion must be that it embraces but one subject, namely, preservation of property against destruction by certain means—fire and explosion—by persons not the owner thereof.

The last above constitutional provision is a mandate on our law-making body requiring the title to an act to be sufficiently explicit to apprise the members thereof of the matter embraced in the bill. The details, however, must be sought in the body of the enactment. *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1912), 179 Ind. 356, 390, 101 N. E. 296; *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 74 N. E. 985; *Crabbs* v. *State* (1923), 193 Ind. 248, 139 N. E. 180; *State* v. *Closser* (1912), 179 Ind. 230, 235, 99 N. E. 1057.

In the case last cited it is said: "It is also the settled rule that the title of an act is to receive a liberal construction if necessary to sustain the legislative intent. A critical construction will not be made of the title to hold a statute unconstitutional, but on the contrary the language used is in all cases given a liberal interpretation and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act."

The trial court properly overruled the motion in arrest.

Appellant has assigned as causes for a new trial, verdict of the jury not sustained by sufficient evidence, verdict contrary to law, and verdict of the jury did not express the opinion of at least four of the jurors that appellant was guilty beyond a reasonable doubt. Since the judgment must be reversed for other alleged errors in the motion for a new trial, we will not give the three mentioned causes any further attention, as they will not likely arise on a retrial.

The trial court gave to the jury instructions Nos. 4 and 5, which, in our judgment, were harmfully erroneous, in that these instructions impressed upon the jury the common-law definition of the word "conspiracy," thereby modifying or changing our statutory definition of the crime, in this case charged, to the extent that any concerted action by two or more persons to accomplish any criminal or unlawful purpose, or a purpose not unlawful but accomplished by criminal or unlawful means, would make them guilty regardless of the provisions of our statute making only those guilty who enter into a combination to commit a felony. The rule that all instructions are to be considered together emphasizes the erroneous character of Nos. 4 and 5 considered in connection with No. 2, which merely incorporated the statute defining both the offense and the purposed felony. The statute defining the offense of which appellant was convicted reads as follows:

"Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, . . ."

It will be noticed that the statute defining the instant purposed felony, or the statute defining the offense with which appellant was charged does not use the word "conspiracy." That word has been attributed by the courts to the statute defining the offense here charged only because it has some of the characteristics of the common-law conspiracy. It is the outstanding word in instructions 4, 5, and 7 given to the jury by the court on its own motion. These instructions together tend to emphasize the importance in this case of the common-law definition of that word. Instruction No. 4 follows:

"A conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means."

No. 5, so far as it is material to the question here involved, reads as follows:

"In order to establish the existence of a conspiracy it is necessary for the state to prove a combination of two or more persons by concert of action to accomplish a criminal or unlawful purpose; and that this defendant was one of this combination."

No. 6 merely advised the jury that where two or more persons agreed to act together in the commission of a felony, each would be guilty of the crime committed, and that the declaration and acts of one made or done in the furtherance of a criminal purpose would bind all. "However, before the declarations or acts of one co-defendant can bind another co-defendant, the evidence must show that there was an agreement, express or implied, among the defendants to commit the crime with which they are charged." No. 7 has to do with the guilt of a person coming into a conspiracy after it is formed. Instruction No. 6 was not intended or given for the purpose of clarifying the court's view of the charge as expressed in instruction No. 4 and

would not be so understood by the jury. All other instructions are on other phases of the case.

At common law, a misdemeanor, if accomplished by the concerted acts of two or more persons, was an infraction of the law, subjecting such persons to penalties. As said in *Hinshaw* v. *State, supra,* "at common law a conspiracy to do an unlawful act is indictable, and a conspiracy to do a lawful act by a criminal means is indictable. A conspiracy to do an act which is a civil wrong is indictable at common law. That is to say, each one of the conspirators doing the act by himself would be liable to respond in damages only; but when two or more conspire to do the act, the conspiracy becomes criminal. Therefore the authorities from other states where the common-law crime of conspiracy exists are wholly aside from the point here in question." The court was speaking with reference to the sufficiency of the indictment.

Common-law crimes in this state have been abolished (§2400, Burns 1926, §9-2401, Burns Ind. Stat. Ann. 1933, §2, Baldwin's Ind. Ann. Stat. 1934), and all public offenses have been, by statute (§2027, Burns 1926, §9-101, Burns Ind. Stat. Ann. 1933, §2009, Baldwin's Ind. Ann. Stat. 1934), defined as follows: "All crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies; and all other offenses against the criminal law shall be denominated misdemeanors." Since we have no common-law offenses in this state, it follows, as said in *Stephens* v. *State* (1886), 107 Ind. 185, 188, 8 N. E. 94: "However immoral, reprehensible or revolting an act may be, it cannot be punished either as a crime or misdemeanor unless it has been defined and dcelared to be either the one or the other by some statute."

This court, in *Brewster* v. *State* (1917), 186 Ind. 369,

115 N. E. 54, in determining the sufficiency of the indictment, and in *Dameron* v. *State* (1928), 201 Ind. 53, 165 N. E. 58, and *Jorman* v. *State* (1928), 200 Ind. 388, 163 N. E. 837, in passing on the sufficiency of the evidence, referred to the common-law definition of a criminal conspiracy, but the court did not, in any one of these cases, sanction the giving of an instruction in a conspiracy case defining the crime at common law. The crime specifically stated in the statute is the one to be charged and proven beyond a reasonable doubt, that is to say, a combination of two or more persons to commit a felony must be so proven. In the Jorman case it is said: "The question of the guilt of one charged with criminal conspiracy is decided by determining whether or not he did 'unite or combine with any other person or persons for the purpose of committing a felony.'"

*Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039, was a conspiracy case, and the manner and means of proof was questioned. In that case much is said as to the kind and character of proof that is admissible to prove the essential element of combining and uniting two or more persons in the furtherance of a common design. In our opinion, that case is not authority for an approval of instruction No. 4 in the instant case, nor can it be said that this instruction was not harmful because it was verbally inaccurate or because of technical errors in the statement of abstract propositions of law, for it went to the very vitals or gist of the offense charged.

The statute to which we have called attention, in plain and unmistakeable language, defines the offense charged in this case, but the trial court, as it seems to us, was not satisfied with that definition, and the jury must have so understood, or else the common-law definition of the common-law crime of conspiracy would not have been submittted to it. The jury might reasonably have

inferred that instructions Nos. 4 and 5 were applicable to the charge or the issue it was called upon to try; that these instructions were the court's version of the meaning of §2882, *supra,* and thus construed, it would include any concerted action to accomplish any criminal or unlawful purpose, or a purpose not unlawful but accomplished by criminal or unlawful means.

Instructions have been given and approved by this court bearing alone on the character of the proof which the jury may consider in determining whether or not there was a combining or uniting or a knowingly uniting of the persons charged, but no instruction approved by this court will be found where the common-law definition of a conspiracy was substituted for the crime defined by our statute and by the courts characterized as a conspiracy.

Instructions Nos. 2, 4, and 5 involved the same essential issuable fact, and, considered together, could have no other effect than to confuse and mislead the jury concerning the necessary facts to be found in order to convict the defendant. Instruction No. 4 had no place in this case, and instruction No. 5 had the effect of emphasizing the erroneous character of No. 4.

Other instructions given to the jury are claimed to be erroneous.

No. 12: "If you should believe from the testimony in this case that any witness or witnesses have wilfully and intentionally testified falsely to any material fact in the case, intending by such false testimony to mislead and deceive you as to the truth in this case, you may under such belief disregard the whole or any part of the testimony of such witness or witnesses, if in your opinion you are justified, under your belief, in so doing."

Appellant asserts that this instruction was harmful for the reason that it omitted two essential elements:

(1) that "knowingly" should have been used instead of "wilfully;" and (2) after the words "witness or witnesses" there should have been inserted the qualifying clause—"insofar as the witness is not corroborated by other satisfactory evidence." We are not persuaded that one who does a thing "wilfully" does not do it "knowingly," and although the words are not synonymous, the jury was not misled by the court's use of the word "wilfully" to the prejudice of appellant. *Peterson* v. *Pusy* (1908), 237 Ill. 204, 86 N .E. 692.

As to appellant's second contention, the instruction, by omitting the qualifying clause, in effect told the jury that in case it found that a witness or witnesses had wilfully and knowingly testified falsely to any material fact in the case, then the question of what part of the testimony should or should not be believed was for it to determine. The credibility of such witness, and the weight to be given his testimony would be involved, and instruction No. 13 informed the jury as to the effect of corroborating testimony. These two instructions, when read together, correctly interpreted the law applicable to this particular phase of the case.

Instruction No. 14 was an exact copy of instruction No. 11 tendered by appellant. No. 14 was directed to the testimony of Joseph Million, an alleged accomplice of appellant. While it informed the jury that one accused of crime might be convicted on the uncorroborated testimony of an accomplice, yet the jury was admonished and cautioned to carefully scrutinize such evidence and to carefully examine it in the light of all other evidence. Appellant is in no position to object to this instruction, but in any event the instruction was properly given. *Adams* v. *State* (1923), 194 Ind. 512, 141 N. E. 460; *Parsons* v. *State* (1921), 191 Ind. 194, 131 N. E. 381.

We will not take the space to copy instruction No. 19

into this opinion. It is subject to criticism in that the subject of the instruction—value of previous good character as to the trait involved in the offense charged —is so extended that its real value may be lost or the jury may be confused on the point intended to be submitted to it by repeating it in different forms.

The conviction of appellant rested largely on the testimony of a single witness, Joseph Million, whose general moral character and his character for truth and veracity was unquestionably proven to be bad, while both the general moral character and character for truth and veracity of the defendant was admittedly shown to be good. This witness was a Union motion picture operator, and for two months continuously immediately prior to the taking over of the State Theatre by the Northern Theatrical Company, of which appellant was a stockholder, he operated the motion picture machine. After the change, this witness, through the appointment of the business agent of the Union, was a substitute, working about two days a week. While he was thus employed, he destroyed, by burning, a picture reel and the manager of the theatre sought to have him removed as operator of the picture machine, and had the matter of his removal up with Kleihege, but had not succeeded in having the Union make the change before the dynamiting of the theatre. This witness testified that he knew Kleihege, not intimately, but as an acquaintance, and thought he "should have helped me to get bond to get out of jail." "I thought Kleihege would help me when I had mentioned his name; he might get me out of jail." He admitted telling his wife and a Mr. Green that it haunted his soul to frame Kleihege. He also testified that Kleihege, on the sidewalk in front of the theatre, and whom he had met only twice before, gave him $2,000 to dynamite the theatre, and that another person was standing close by who saw the money paid and that

he gave $1,000 to the party who did the job. The party who was standing near testified that he saw no money change hands and did not know of the witness having any noticeable amount of money after that. The other four alleged co-conspirators were not acquainted with Kleihege, in fact, none of them had ever met him.

The foregoing brief reference to the testimony of the only witness directly connecting appellant with the crime charged does not warrant this court in saying that appellant was clearly and conclusively guilty of the charge preferred against him, which it should be able to do before declaring harmless instructions erroneous and confusing, and not applicable to the issue on trial.

Judgment reversed, with instructions to the court below to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.