## SWANSON *v.* STATE OF INDIANA.

[No. 27,889.   Filed January 26, 1944.]

*Parrish & Parrish* and *Otto E. Grant,* all of Fort Wayne, and *Guy Dausman,* of Goshen, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was convicted of the offense of criminal abortion charged in an indictment based on § 10-105, Burns' 1942 Replacement, § 2428, Baldwin's 1934. Among the numerous errors assigned in his motion for a new trial was the giving of the following instruction tendered by appellee:

"The law gives persons accused of crime the right to testify in their own behalf, but their credi-

bility and the weight to be given to their testimony are matters exclusively for the jury. Therefore, in weighing the testimony of the defendant in this case, you have the right to take into consideration the manner of his testifying, the reasonableness or unreasonableness of his account of the transaction, and his interest in the result of the case, as affecting his credibility. You are not required to receive blindly the testimony of such accused person as true, neither are you at liberty to disregard his testimony, but you are to give it due consideration, and to determine whether or not his statements are true, and made in good faith, or only for the purpose of avoiding conviction."

The giving of substantially the same instruction has been held to be reversible error in numerous cases, including the following: *People* v. *Arnold* (1910), 248 Ill. 168, 93 N. E. 786; *People* v. *Munday* (1917), 280 Ill. 32, 117 N. E. 286, 254 U. S. 638, 65 L. Ed. 451, 41 Sup. Ct. 364; *Donner* v. *State* (1904), 72 Neb. 263, 100 N. W. 305; *Fletcher* v. *State* (1909), 2 Okla. Cr. 300, 101 P. 599; *Bridges* v. *United States* (1909), 3 Okla. 64, 104 P. 370; *State* v. *White* (1895), 10 Wash. 611, 39 P. 160. In *Fletcher* v. *State, supra,* the court says:

"We think that it is error for the court to single out any special witness, personally, and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibility of witnesses should be general, and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no reason why he should be visited with condemnation upon the one hand, or clothed with sanctity upon the other. He is before the court as a witness, and should be treated by both the court and the jury just as other witnesses are treated—no better and no worse."

It should be noted that while in the Illinois cases, and perhaps others, the instruction is condemned on other grounds, apparently the credibility of the testimony of a party is there permitted to be the subject of a separate instruction. In this respect the cases are out of line with the rule stated, *supra*, by the Oklahoma court and the rule which has been recognized in Indiana. The following cases are pertinent: *Unruh* v. *The State, ex rel. Baum* (1886), 105 Ind. 117, 4 N. E. 453; *Bird* v. *State* (1886), 107 Ind. 154, 8 N. E. 14; *Scheerer* v. *State* (1925), 197 Ind. 155, 149 N. E. 892; *Davis* v. *State* (1936), 210 Ind. 550, 2 N. E. (2d) 983; *Culp* v. *State* (1944), ante p. 202, 52 N. E. (2d) 486. The error in thus singling out, for special and derogatory emphasis, the subject of appellant's credibility, could not be cured by instructions as to the credibility of witnesses in general. For this error the judgment must be reversed.

It is unnecessary to notice other alleged errors except such as might be the occasion of future controversy in another trial or appeal. One such is the sufficiency of the indictment to withstand appellant's motion to quash which was overruled. After charging use of instruments by appellant on June 17th in Allen County, Indiana, with intent to produce miscarriage, the indictment states, "in consequence of which the said Ruth Eitniear then and there miscarried and languished until the 26th day of June, 1942, A. D. and died in the County of Lucas, State of Ohio. . . ." It is contended that the place of miscarriage is not certainly stated. In the briefs the question is coupled with the contention that there was a fatal variance because the evidence discloses that the foetus was expelled while decedent was at her home in Ohio. The offense is complete under this statute if either

miscarriage or death results from the use of the instrument with criminal intent. *Hauk* v. *State* (1897), 148 Ind. 238, 47 N. E. 465. Here both miscarriage and death are pleaded in the conjunctive. Only one of the two need be proved. *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403; *Cooprider* v. *State* (1941), 218 Ind. 122, 31 N. E. (2d) 53, 132 A. L. R. 553. The words "then and there" place the miscarriage in Allen County, Indiana, so the motion to quash was properly overruled. If the evidence was sufficient to prove that death resulted from appellant's criminal act, it was immaterial whether there was a miscarriage or where it occurred. If miscarriage alone were relied upon a more serious question would be presented. We refrain from comment on the evidence.

A surgeon after detailing the pathological conditions found by him in an autopsy testified that the girl's death was caused by septicemia. Asked the cause of the septicemia he said "An induced abortion." There was no cross-examination. It is claimed that the answer was as to an ultimate fact exclusively within the province of the jury. The authorities as to admission of this kind of testimony are collected in notes in 78 A. L. R. 755 and 136 A. L. R. beginning on page 985. The former quotes 11 R. C. L. page 583 wherein the author expresses similar views to those caustically stated in Wigmore on Evidence (3rd Ed.) § 1976 and notes. See also 32 C. J. S. Evidence § 534. We think the matter is summarized in *Cropper* v. *Titanium Pigment Co.* (1931), 47 F. (2d) 1038, 78 A. L. R. 737, as follows:

> "The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinc-

> tions which are in many cases impracticable, and a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by the jury."

It should be noted also that the ultimate fact in this case is not whether the abortion was "induced" but whether it was criminal. Some cases have been decided upon the basis of this distinction. See 136 A. L. R. 988. The State here contended that appellant's use of an instrument was the cause of the miscarriage and death. He contended that before she became his patient either she or some one else had attempted an abortion the results of which were apparent to him upon examination and that his treatment was alleviative. That there had been an attempt by some one to "induce" an abortion was just as much a part of his defense as of the State's case. The question was as to the identity of the culprit. With this situation we fail to see harm to him in overruling his motion to strike out the answer but if, without explanation, it seemed to him "highly prejudicial" the prejudice might have disappeared in the course of cross-examination to discover what the witness meant by "induced abortion."

Certain testimony concerning a card with appellant's name thereon was admitted. While we think it was harmless it should have been excluded on appellant's objection that it was hearsay.

The cross-examination of appellant by the prosecuting attorney explored collateral matters that had no bearing on the issues or the credibility of the witness. Failure of the court to sustain appellant's objections was not far short of an abuse of discretion.

The charge is also made in the motion for a new trial that the prosecuting attorney by a letter to an

attorney in Ohio succeeded in having two hospital employees persuaded to refuse to be sworn and testify as to the contents of certain records desired by appellant as newly discovered evidence. This conduct, which, so far as the record discloses, was not denied, is alleged to have occurred after the trial but that fact would not excuse any such interference. A person called to testify is entitled to legal advice as to the propriety of his becoming a witness or as to his privileges but it is not for the State's attorney to volunteer that advice.

There was also an affidavit filed in support of appellant's motion for a new trial to the effect that the mother of decedent was subpoenaed to testify by deposition to be taken in Ohio after the trial (as newly discovered evidence) and she informed the affiant that "she was advised by the Prosecuting Attorney to ignore and refuse the subpoena or to testify for anyone" and that she did in fact fail to appear in response to the subpoena. If the prosecuting attorney of Allen County was guilty of this misconduct he either had an erroneous and inadequate conception of his duties or he permitted his emotions to override his judgment. We commend to him, and it will harm no prosecuting attorney to read, the opinion of Mr. Justice Sutherland in *Berger* v. *United States*, 295 U. S. 78, 79 L. Ed. 1314, 55 Sup. Ct. 629, and particularly the following:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law,

the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

Judgment reversed with instructions to sustain appellant's motion for new trial.

NOTE.—Reported in 52 N. E. (2d) 616.