ALDER *v.* STATE OF INDIANA.

[No. 29,711. Filed December 19, 1958.]

*John D. Clouse,* of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, and *Merl M. Wall,* Assistant Attorney General, for appellees.

BOBBITT, J.—Appellant was charged by affidavit with the crime of involuntary manslaughter under Acts 1941, ch. 148, §2, p. 447, being §10-3405, Burns' 1956 Replacement, tried by jury, and found guilty of reckless homicide. From a judgment assessing a fine in the sum of $1 and imprisonment in the Indiana State Prison for a period of not less than one (1) nor more than five (5) years, this appeal is prosecuted.

Of the questions raised and discussed by appellant in the argument section of his brief pursuant to Rule 2-17 of this court, only two need be considered.

*First:* Appellant asserts that the trial court erred in giving to the jury on its own motion, over his objection, court's Instruction No. 12, as follows:

"The defendant in this case has testified in his own behalf. He is an interested witness, and you have the right to consider his interest in weighing

his testimony the same as you would consider the interest of any other witness having a like degree of interest in the outcome of this case."

This court has repeatedly held that:

"When a defendant testifies in a criminal case in his own behalf, his testimony must be considered as the testimony of any other witness and ■ weighed in the same manner, and it is error to direct the jury to consider or weigh his testimony in any other manner. *Kell* v. *State* (1924), 194 Ind. 374." *Scheerer* v. *State* (1925), 197 Ind. 155, at page 160, 149 N. E. 892. See also: *Kell* v. *State* (1924), 194 Ind. 374, 379-380, 142 N. E. 865; *Metzger* v. *State* (1938), 214 Ind. 113, 115-116, 13 N. E. 2d 519.

An instruction reciting in latter part that "the jury is to take the fact [that he is the defendant] into consideration, and if, on so doing, the jury is satisfied that his testimony is true, they may give it all the weight due to the testimony of any other witness" was before this court in *Hartford* v. *The State* (1884), 96 Ind. 461, and at page 467, it is said:

"The latter part of the instruction, in any event, must be held erroneous. The jury were informed that, if they were satisfied that the appellant's testimony was true, they might give it all the credit due to the testimony of any other witness. If the jury were satisfied that his evidence *was true,* it was their duty to believe and act upon it without reference to other testimony. In such case it would not be merely entitled to the weight due the testimony of *any other* witness, but would be entitled to full belief, though contradicted by the evidence of other witnesses." (Our italics.)

In *Bird* v. *The State* (1886), 107 Ind. 154, 8 N. E. 14, it was held to be reversible error to give an instruction which singled out and tended to discredit the testimony of the defendant-appellant. See also: *Swanson* v. *State* (1944), 222 Ind. 217,

218, 220, 52 N. E. 2d 616; *Felix* v. *State* (1946), 224 Ind. 308, 66 N. E. 2d 894; *McIntosh* v. *The State* (1898), 151 Ind. 251, 51 N. E. 354.

Appellee contends that the court's Instruction No. 12 was properly given, when measured by the rule as stated in *Bohan* v. *State* (1924), 194 Ind. 227, at page 239, 141 N. E. 323, as follows:

> "Whether an instruction in a criminal case is erroneous as invading the province of the jury is to be tested by the question whether the court intimates its opinion as to the credibility of witnesses or weight to be given the testimony. If the court did intimate or express such opinion it is error."

In our opinion the last sentence of such instruction singles out the testimony of the defendant-appellant herein, and indicates to the jury that in the opinion of the court he is likely to testify falsely in order to gain his freedom.

We do not follow appellee in its interpretation of the meaning and effect of such instruction when it states that by it "The jury is instructed to consider the defendant's interest as they would consider the interest of *any other witness*." (Our emphasis.) The instruction continues and, as will be noted, closes with the words, "having a like degree of interest in the outcome of this case." These last words pinpoint and single out the defendant-appellant. Who else in the case, but the defendant-appellant, could have a like degree of interest in its outcome? This instruction differs materially from that which instructed the jury to consider the defendant's testimony and "apply to it the same standards by which they would judge the credibility of other witnesses that have testified" and which was approved in *Adams* v. *State* (1924), 194

Ind. 512, 520, 141 N. E. 460. (Overruled on another point by *Todd* v. *State* (1951), 229 Ind. 664, 672, 101 N. E. 2d 45.)

An instruction which told the jury that " 'you should consider the interest of defendant in the result of the case' " was held in *Scheerer* v. *State, supra* (1925), 197 Ind. 155, 160, 149 N. E. 892, to discredit the testimony of the defendant. In our opinion the effect of the court's Instruction No. 12 herein is the same.

> "The statute makes the evidence of the accused competent in his own behalf, and when he goes upon the witness stand, he has a right to put his evidence before the jury unprejudiced by any adverse criticism by the court." *Bird* v. *State, supra* (1886), 107 Ind. 154, 157, 8 N. E. 14.

When a defendant takes the stand to testify in his own behalf, he is before the court as a witness and should be treated by both the court and the jury in the same manner as are other witnesses.

Appellee has failed to distinguish the instruction here in question from those of similar nature which have consistently been held prejudicial by this court, and we see no reason why we should now change the rule which has been followed over a period of many years.

For the reasons above stated, it was error for the trial court to give its Instruction No. 12.

*Second:* Because it is likely to occur on a retrial of the case, we also consider the question raised concerning the testimony of the physician who treated appellant in the hospital immediately following the accident.

While appellant was lying unconscious in the hospital a physician, who was at the time "on call" took a blood sample from appellant in order to determine

the type of his blood preparatory to giving him a blood transfusion. A State Police officer who was present at the time requested the physician to take a sample of appellant's blood for him for the purpose of making an alcoholic test. After the physician had drawn about fifteen cubic centimeters of blood he instructed a nurse who was present and assisting him, to give one-half of it to the hospital laboratory technician and one-half to the State Police officer. The blood sample given to the police officer was then put in a special type bottle furnished by him and mailed by him to the State Police laboratory in Indianapolis.

The State called the physician as a witness to show that the blood sample, about which a State Police technician was to testify as to its alcoholic content, had been taken from appellant by the physician.

Appellant asserts that it was error to admit the testimony because the witness was acting as his physician at the time he took the sample of blood, and such transaction between the physician and defendant-appellant was a privileged matter and, therefore, not competent evidence.

Acts 1881 (Spec. Sess.), ch. 38, §275, p. 240, being §2-1714, Burns' 1946 Replacement, provides, in pertinent part, as follows:

"The following persons shall not be competent witnesses:

. . . .

"Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

The effect of the statute is to prohibit the ascertainment of truth in many controversies, and because of

this result, and the rule that statutes in deroga-
tion of the common law, as this is, will be
strictly construed, its prohibitions are not to
be extended by implication. *Stayner* v. *Nye* (1949),
227 Ind. 231, 237-8, 85 N. E. 2d 496, and cases there
cited.

In *Chicago, etc., R. Co.* v. *Walas* (1922), 192 Ind.
369, 135 N. E. 150, 22 A. L. R. 1212, appellee Walas was
admitted to a hospital while he was unconscious. The
physician who was called as a witness for the State
to prove that appellee was intoxicated at the time the
physician first saw him, testified that he was in the
emergency ward working on another case when appel-
lee was brought into the room; that a few minutes later
the nurse notified him that he was to take care of ap-
pellee; and that in the interval he saw appellee vomiting
and formed an opinion as to whether appellee was
intoxicated. The trial court excluded the offered testi-
mony as to appellee's intoxication.

At page 375 of 192 Ind., this court said:

"Whatever facts the doctor learned as to the
condition of appellee, when he was in the emer-
gency room of the hospital awaiting surgical
treatment by the doctor, clearly was learned 'in
the course of his professional business' within the
meaning of the statute. §520, cl. 4, Burns' 1914,
§497 R. S. 1881."

If a physician may not testify from observation
whether or not in his opinion a patient on whom he
was about to perform an operation was intoxicated, it
would seem logically to follow that a physician may
not, without the patient's consent, give a sample of
his blood which he had drawn "in the course of his
professional business" to a policeman to ascertain the
alcoholic content, for the purpose of determining

whether or not such patient was at the time under the influence of intoxicating liquor.

If one of these acts was a violation of the statute (§2-1714, *supra*) it seems to us that the other must also be in violation of its provisions.

That the blood sample here in question was taken from appellant by the physician "in the course of his professional business" is not disputed. Neither is it denied that part of the blood sample was, on instructions of the physician, given by the nurse to the State Police officer, without the consent of appellant.

"Matter communicated" as used in the statute has been defined "as information obtained in the sick room, heard or observed by the physician, or of which he is otherwise informed pertaining to the patient and upon which he is persuaded to do some act or give some direction or advice in the discharge of his professional obligation." *Myers* v. *State* (1922), 192 Ind. 592, 600, 137 N. E. 547, 24 A. L. R. 1196.

In the case at bar the patient was unconscious and was completely in the trust and care of the physician. If, under such circumstances, a physician is prohibited by statute from testifying as to the intoxicated condition of the patient,[1] it is our opinion that the statute would also prohibit testimony of a physician concerning a sample of blood which he took from the patient and caused to be delivered to the State Police officer to be used in determining the alcoholic content of the blood. This was clearly information obtained by the physician "in the sick room" and it was error to overrule appellant's objection to testimony concerning the same.

1. *Chicago, etc., R. Co.* v. *Walas* (1922), 192 Ind. 369, 135 N. E. 150.

 It is not necessary to consider the other questions presented because they are not likely to arise on a retrial.

Because of the errors above noted, the judgment must be reversed.

Judgment reversed with instructions to the trial court to sustain appellant's motion for a new trial.

Landis, C. J., Achor and Emmert, JJ., concur.

Arterburn, J., concurs in result.

NOTE.—Reported in 154 N. E. 2d 716.