HENRY J. TURNER *v.* STATE OF INDIANA.

[No. 470S93. Filed April 4, 1972.]

*Raymond S. Robak, Wolf & Robak,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellant, together with two co-defendants, was charged by indictment with the crime of first degree murder and murder in the commission of a felony, to-wit: robbery. Separate trials were granted to appellant's co-defendants. Appellant was tried by jury and found guilty of the lesser included offense of manslaughter.

The evidence most favorable to the state discloses:

The decedent, Charles Dale, was beaten and robbed during the night of February 22-23, 1969. Shortly after the incident he returned home, bloody and wet. He told his mother, "Two men have really beat me up tonight." Shortly thereafter he lapsed into a coma, was taken to Marion County General Hospital where surgery was performed. He remained in a coma until his death on March 20, 1969.

Billy Joe Cawthon, an alleged accomplice of the appellant in the commission of the charged crime, testified that he was present in the Haughville Tavern on February 22, 1969, at about 10:00-11:00 P.M. He stated that as he came out of the building he noticed a commotion across the street and saw Richard Emerson, the other co-defendant in this case, run from behind the building followed by the decedent. Emerson bent down, picked up a brick and ran around the tavern. The decedent also went behind the building. Cawthon testified he heard "a little smack" and he heard Turner say, "damn Richard." The witness crossed the street and asked what was

going on. He then told how the defendants beat and robbed the decedent.

The pathologist testified that decedent died of a severe blow to the head, which probably could not have been caused by a fist.

At the time the appellant was arrested and after first being advised of his constitutional rights and having waived his right to have an attorney present, gave a written statement to the police in which he stated that he had agreed to join Cawthon and Emerson in the robbery which resulted in the decedent's death. In his statement the appellant further described the manner in which the attack occurred against the decedent.

Appellant claims the trial court erred in permitting Viola Dale, the mother of Charles Dale, the decedent, to testify that the decedent arrived home about 2:00 A. M. of the morning following the alleged attack and stated to her that he had been severely beaten by some men. It is appellant's position that this remark by the decedent to his mother was too far removed in time and place from the alleged scene of the attack to constitute a part of the *res gestae*. Without deciding whether or not this evidence was admissible under the *res gestae* exception to the hearsay rule, we hold that its inclusion was not of such substantial harm to appellant's case to justify reversal. There was other substantial evidence that the decedent did in fact receive a severe beating at the hands of someone on the night in question. The mother's testimony added nothing to this fact. Even if the testimony of decedent's mother should have been rejected (a fact which we do not decide), its admission was harmless error in that it merely recited facts clearly proven by other competent evidence. *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865, 22 Ind. Dec. 573; *Rowe* v. *State* (1968), 250 Ind. 547, 237 N. E. 2d 576, 14 Ind. Dec. 516; *Peterson* v. *State* (1968), 250 Ind. 269, 234 N, E, 2d 488, 13 Ind. Dec. 321,

Appellant next alleges the trial court erred in permitting one John Robert Fagan, foreman of the grand jury which returned the indictment against appellant, to testify as to evidence received before the grand jury from his memory without reading from the transcript of the proceedings before the grand jury. The grand jury foreman was called by the appellant pursuant to I.C. 1971 35-1-15-17, also found in Burns Ind. Stat., 1956 Repl., § 9-817, for the purposes of impeaching the accomplice witness. We find no merit in this contention by the appellant and further note that no objection was raised at the trial by the appellant to the procedure followed by the trial court. The court first allowed the witness to refresh his memory from the transcript of proceedings before the grand jury, then permitted him to testify. In *Richardson* v. *State* (1971), 255 Ind. 653, 266 N. E. 2d 51, 24 Ind. Dec. 474, this Court held that it was proper to permit a member of the grand jury to testify concerning the proceedings before the grand jury and to refresh his recollection from the transcript of such proceedings.

Appellant next claims the verdict of the jury is contrary to law and not sustained by sufficient evidence. In reviewing the allegation of sufficiency of the evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses. We will look only to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89, 16 Ind. Dec. 429. There is evidence in this record that the decedent died from a severe blow on the head and that such blow was received during the alleged robbery. It is true there is no direct evidence that the appellant personally struck the death blow. There was ample evidence from which the jury could find that the appellant was acting in concert with others in inflicting injury upon the decedent. Such evidence was sufficient to support the verdict. The trial court properly instructed the jury as follows:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be commited, may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

We, therefore, hold the verdict of the jury was not contrary to law and that it was sustained by sufficient evidence.

Appellant next claims the trial court erred in reading the court's Instruction No. 17 to the jury, which instruction reads as follows:

"Malice may be proved by direct evidence such as prior threats, assaults or seeking an opportunity to perpetrate the act. This is called express malice. Malice may also be implied from the act of killing if the killing is done purposely and without legal excuse or sufficient provocation; and if the act is perpetrated with a deadly weapon so used as to likely produce death, the purpose to kill may be inferred from the act of killing."

Appellant claims this instruction is erroneous for the reason that it refers to the use of a deadly weapon whereas he claims there is no evidence of the use of a deadly weapon nor does the indictment charge the use of a deadly weapon. We find no merit to appellant's contention. There is evidence in this case that a brick was used in the assault. We cannot say that the trial court injected a new fact into the trial by the giving of this instruction. We, therefore, hold the instruction was applicable to the evidence received in the case.

Appellant next alleges the trial court erred in refusing to give appellant's tendered Instruction No. 4, which reads as follows:

"The testimony of an accomplice should be cautiously received and carefully scrutinized by the jury, and weighed by the jury according to its credibility."

There is no question but what the testimony of accomplices at one time was not accepted at all. However, Indiana long ago by statute specifically provided for the testimony ██ of accomplices. See Burns Ind. Stat., 1956 Repl., § 9-1603, I.C. 35-1-31-3. This Court has stated that a conviction may be based upon the uncorroborated testimony of an accomplice. *Green* v. *State* (1960), 241 Ind. 96, 168 N. E. 2d 345. From time to time this Court has made statements to the effect that the testimony of an accomplice must be closely scrutinized and received with caution. See *Green* v. *State, supra; Kleihege* v. *State* (1934), 206 Ind. 206, 188 N. E. 786. There can be no doubt as to the wisdom of this observation. In fact, similar observations might correctly be made concerning the testimony of many witnesses who have an obvious interest in the person or the subject matter of the litigation. It is, however, improper for a trial court to invade the province of the jury by commenting on the competency of or the weight to be given to the testimony of any particular witness who testifies in a case. *Taylor* v. *State* (1972), 257 Ind. 664, 278 N. E. 2d 273, 29 Ind. Dec. 225.

In *Bohan* v. *State* (1923), 194 Ind. 227, 141 N. E. 323, at page 239 this Court stated:

"Whether an instruction in a criminal case is erroneous as invading the province of the jury is to be tested by the question whether the court intimates its opinion as to the credibility of witnesses or weight to be given the testimony."

The same Court in discussing the specific question of the testimony of an accomplice in *Adams* v. *State* (1923), 194 Ind. 512, 141 N. E. 460, stated that an instruction which provided specifically that the evidence of an accomplice is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness was correct. The general pattern of instructions long used in this state and followed in the case at bar instructs the jury

that they are the judges of the credibility of the witnesses and the weight to be given to their testimony. They are further instructed that in determining what evidence they will accept and what they will reject, they may take into consideration the interest, if any, that a witness has in the result of the trial, the probability of his or her testimony, his relationship, if any, to the accused, and such other considerations as appear right and proper. They are also instructed that the state must establish the guilt of a defendant beyond a reasonable doubt. Such instructions which were given in this case afford defense counsel ample opportunity in addressing the jury at the close of the case to call attention to an accomplice's interest in the case and his alleged relationship with the accused, and to call attention to any facts which counsel may have elicited from the alleged accomplice on cross-examination which might give cause to doubt his credibility. In *Green* v. *State, supra,* this Court, at page 102, made the following statement:

"The testimony of accomplices should be closely scrutinized and cautiously received, and this matter should be called to the attention of the trier of facts in considering the weight to be given such evidence."

Inasmuch as the above statement might be interpreted to mean that the trial court can properly invade the province of the jury and imply to the jury that in the court's opinion an accomplice is not susceptible to the same believability as other witnesses, it is disapproved. As we have pointed out, defense counsel is well armed with the ability to submit to the jury the probable bias and prejudice of any witness, including an accomplice. It is certainly proper for him to do so. It is in this manner that the questionable nature of an accomplice's testimony is to be submitted to a jury. The trial court was correct in refusing to invade the province of the jury in the giving of appellant's tendered Instruction No. 4.

The appellant next claims the trial court erred in granting a separate trial to the defendant, Richard Emerson, on the

day the trial was to commence. It is appellant's position that such a late motion for separate trial was not timely filed, and that he was prejudiced for the reason that his defense was based upon the assumption that he and Emerson would be tried together. However, a search of the record fails to disclose any motion for continuance on the part of the appellant. The granting of separate trials to co-defendants is within the sound discretion of the trial court. *Ware* v. *State* (1963), 243 Ind. 639, 189 N. E. 2d 704, 1 Ind. Dec. 306; certiorari denied 375 U. S. 934. The trial court did not err in granting a separate trial in this case.

The trial court is affirmed.

Arterburn, C. J. and Hunter and Prentice, JJ., concur; De-Bruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—I dissent. In Indiana, it is well-settled law that convictions may be based upon the uncorroborated testimony of an accomplice, *Green* v. *State* (1960), 241 Ind. 96, 168 N. E. 2d 345, and the rule until today in Indiana has been that "the testimony of accomplices should be closely scrutinized and cautiously received, and this matter should be called to the attention of the trier of facts in considering the weight to be given such evidence." 241 Ind. at 348; *Kleihege* v. *State* (1934), 206 Ind. 206, 188 N. E. 786.

The development of this rule resounds with out great concern for the rights of the accused individual. The *Green* case, with its obvious statement of the rule in this area deeply entrenched in both reason and history, stands for the proposition that we will not allow an accused citizen to be convicted on the testimony of an accomplice unless the jury is instructed on the proper framework within which to judge the case. In our concern to insure a fair trial for each accused and in our strong distrust toward the accomplice's version of the events, we, along with the vast majority of the other jurisdictions in

this country, have fashioned a rule which gives such a case to the jury in its proper light, so that their verdict may be justly considered and delivered; anything less denies a fair trial to the accused.

To drop this important safeguard to a fair trial on the basis that personal expressions by the Court concerning the credibility of particular witnesses is unfair, is to confuse the history and rationale of the rule in question. The cases relied on for the majority's rule are all concerned with the unfairness inherent in allowing a judge to comment adversely on the accused's own testimony. *Taylor* v. *State* (1972), 257 Ind. 664, 278 N. E. 2d 273, relying on *Swanson* v. *State* (1944), 222 Ind. 217, 52 N. E. 2d 616, and *Alder* v. *State* (1958), 239 Ind. 68, 154 N. E. 2d 716; *Bohan* v. *State* (1923), 194 Ind. 227, 141 N. E. 323, relying on *Hiatt* v. *State* (1920), 189 Ind. 524. The similarity between these opinions and the opinions in the line of *Green* v. *State, supra,* is simply that they both reflect the same kind of enlightened interests in the right of an accused to a fair trial. It is difficult to see such an interest in the majority opinion's disposition of this matter. The majority has, in several short paragraphs, eliminated this important safeguard to the accused who is faced with the uncorroborated testimony of an "accomplice in crime" and raised the status of this testimony to that of any other disinterested witness.

Accomplice testimony has been a key weapon in prosecutions for many centuries. The original battles fought in this area concerned not the credibility of the accomplice testimony, but his competency to testify at all. According to Wigmore, once a witness was declared competent there could be little attempt to weigh the comparative quality of testimony of different witnesses. This was so because:

"An oath, in the notions of the time, had a certain dead weight of its own; one oath was as good as another oath. Should the witness once get in, the harm (they thought) was done; for there would be little weighing of the com-

parative quality of the different persons' oaths. The struggle therefore was made at the threshold." 7 Wigmore, EVI-DENCE, § 2056 (3d ed. 1940)

However, in recent times the trend has been to declare more and more classes of witnesses as competent and to allow the jury to determine the credibility of such witnesses. As the United States Supreme Court said in *Funk* v. *U. S.* (1933), 290 U. S. 371, 54 S. Ct. 212, quoting from *Benson* v. *U. S.* (1892), 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991:

> " 'Indeed, the theory of the common law was to admit to the witness stand only those presumably hones, appreciating the sanctity of an oath, unaffected as the party by the result, and free from any of the temptations of interest. The courts were afraid to trust the intelligence of jurors. But the last 50 years have wrought a great change in these respects, and today the tendency is to enlarge the domain of competency, and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction.' " 290 U. S. at 376.

Although accomplices were declared to be competent witnesses very early, the quality of this type of testimony was always seriously questioned. Merely calling an accomplice competent to testify has never meant, in modern times, that his testimony should be given credence equal to other witnesses. As the United States Supreme Court said in *Crawford* v. *U. S.* (1908), 212 U. S. 183, 29 S. Ct. 260, when speaking of an accomplice's testimony:

> "It is not to be taken as that of an ordinary witness of good character in a case, whose testimony is generally and prima facie supposed to be correct. On the contrary, the evidence of such a witness ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the rules governing other and apparently credible witnesses. In many jurisdictions such a man is an incompetent witness unless he has been pardoned." 212 U. S. at 204.

And more recently in *On Lee* v. *U. S.* (1952), 343 U. S. 747, 72 S. Ct. 967, 96 L. Ed. 1270, the court said:

"The use of informers, accessories, *accomplices,* false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination *and to have the issues submitted to the jury with careful instructions.*" 343 U. S. at 757. (Emphasis added.)

Judge Wisdom, speaking in *Phelps* v. *U. S.,* 252 F. 2d 49 (5th Cir. 1958), spoke to this problem as follows:

"A skeptical approach to accomplice testimony is a mark of a fair administration of justice. From Crown political prosecutions, and before, to recent prison camp inquisitions, a long history of human fraility and governmental overreaching for conviction justifies distrust in accomplice testimony. Cobham's misplaced hope for immunity that helped send Raleigh to the tower is on the same level with the hope of some narcotic peddler or some other poor wretch to save his skin by laying the entire blame on a friend or close associate." 252 F. 2d at 52.

This skeptical and suspicious approach to the testimony of an accomplice springs from more than a simple distrust of a witness involved in criminal activity. The power the State holds over the future of an accomplice, especially one under indictment, is awesome. From promises of immunity from prosecution, through promises of leniency in the charge or the sentence, to promises of special favors (*e.g.,* low bail), the prosecution has valuable currency to pay for an accomplice's testimony. Where the price of such testimony is so high (to the accomplice) we justifiably fear that the testimony purchased may not be motivated solely by the pursuit of truth. As was aptly pointed out in *State* v. *Mangrella* (1965), 86 N. J. Super. 404, 207 A. 2d 175, quoting *State* v. *Begyn* (1961), 34 N. J. 35, 167 A. 2d 161:

"We deal with the 'accomplice' as having a 'special interest' only because our law has accepted the assumption that

> a witness 'already enmeshed' . . . in the hope of leniency
> . . . may falsely involve another."

Realization of these problems has led to the rule in many states that a conviction cannot be sustained on the testimony of an accomplice alone. See 30 AM. JUR. 2d, § 1151, for a list of these states.

Thus, the testimony of an accomplice has been accepted only with extreme caution with the proviso that the trier of fact be made aware of the suspicious status of such testimony, *U. S.* v. *Davis,* 439 F. 2d 1105 (9th Cir. 1971) ; *People* v. *Valerio* (1970), 13 C. A. 3d 912; *Tillery* v. *U. S.,* 411 F. 2d 644 (5th Cir. 1969) ; *McMillen* v. *U. S.,* 386 F. 2d 29 (1st Cir. 1967) ; *U. S.* v. *Aqueci,* 310 F. 2d 817 (2d Cir. 1962) ; *Freed* v. *U. S.,* 266 F. 2d 1012 (D.C. Cir. 1920), and the failure to caution the jury about accomplice testimony has been held in certain circumstances to be plain error, requiring reversal although no request for such an instruction had been made. *Tillery* v. *U. S., supra; Williamson* v. *U. S.,* 332 F. 2d 123 (5th Cir. 1964).

In the case before us, the testimony of the accomplice contained all the elements which lead us to accept such testimony with extreme caution. The accomplice, indicted with the defendant but granted a separate trial and still awaiting trial, exonerated himself completely while pinning the blame on the appellant and another. The accomplice admitted that he lied in previous written statements to the police, admitted that he bore a grudge against the appellant, and admitted that his former version of the offense implicated the appellant in the death to a far greater extent than his final version. In such a case the cautionary instruction to the jury is clearly called for and should have been given in my opinion.

The jury, as all juries, was instructed that the State had the burden of proving guilt beyond a reasonable doubt in order to sutain a conviction. Then the court went on to define the term reasonable doubt, as is the general custom. Surely

the majority would find no error in thus giving the jury a legal definition of reasonable doubt, even though the phrase is a commonly understood one which could be amplified by counsel in closing argument. Such a setting of the legal framework within which a case is given to the jury is not usually considered to be an invasion of the province of the jury. Yet, I see no more of an invasion of that province in the giving of this simple accomplice instruction which seeks only to cast the case in its proper legal context.

NOTE.—Reported in 280 N. E. 2d 621.