STATE OF INDIANA EX REL. RALPH W. VAN NATTA, COMMIS-
SIONER OF THE BUREAU OF MOTOR VEHICLES
*v.* CHARLES V. MARLETT.

[No. 3-1075A227. Filed December 22, 1976. Rehearing denied January
21, 1977. Transfer denied July 28, 1977.]

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,
James N. Shumacker,* Deputies Attorney General, for appellants.

*Steve Lustina, Cohen and Thiros,* of Gary, for appellee.

STATON, P.J.—On November 19, 1974, Charles V. Marlett
was adjudged by the Lake Circuit Court to be an habitual
traffic offender, and the Court restricted his driving to business and commercial purposes for a period of one year. This
adjudication was based on a driving record which included the
following convictions: (1) on May 15, 1965 a conviction for
speeding (2) on February 19, 1966 a conviction for reckless
driving (3) on April 11, 1966 a conviction for reckless
driving and a conviction and suspension for driving while under the

influence (4) on June 8, 1970 a conviction and suspension for driving while under the influence (5) on October 26, 1974 a conviction for speeding (6) on November 19, 1972 a conviction and suspension for driving while under the influence and a conviction for an automatic signal violation (7) on March 10, 1973 a conviction for reckless driving (8) on June 14, 1973 a conviction and suspension for driving while under the influence and a conviction for speeding and (9) on May 5, 1974 a conviction and suspension for driving while under the influence and a conviction and suspension for driving while suspended.

At the time Marlett was given a restricted license by the Court his license was in a state of suspension. The Court ordered the Commissioner of the Bureau of Motor Vehicles to return Marlett's license to him.

The State of Indiana appeals the issuance of a restricted license to Marlett and raises these issues:

(1) Is the court's finding as to Marlett's entitlement to restricted driving privileges contrary to law?

(2) Is the court's ordering of the return of Marlett's driver's license while such license was under a valid suspension of the Bureau of Motor Vehicles contrary to law?

After considering both issues, we conclude that the trial court's judgment on each was not contrary to law, and we affirm.

## I.

### Granting of Restricted License

IC 1971, 9-4-13-1 through 18 (Burns Code Ed.) establishes the categories of behavior which may lead to adjudication as an habitual traffic offender. A restricted license may only be granted if the following criteria are met:

(1) That the adjudication was based on the behavior proscribed in 9-4-13-3 (a) (3) ;

(2)  That the defendant established that he operated his motor vehicle for commercial and business purposes and that his mileage was in excess of that of an average driver; and,

(3)  That such excessive mileage may have been a contributing factor in his certification by the Bureau of Motor Vehicles for adjudication as an habitual traffic offender.

IC 1971, 9-4-13-10 (Burns Code Ed.). IC 1971, 9-4-13-3 (a)(3) proscribes behavior resulting in ten or more convictions, singularly or in combination, not arising out of the same incident, of any moving violation. However, convictions for offenses enumerated in IC 1971, 9-4-13-3(a)(1) and (2) may be added to the convictions described in IC 1971, 9-4-13-3(a)(3). IC 1971, 9-4-13-10, which governs the granting of a restricted license, initially requires a certification by the Bureau of Motor Vehicles to verify that the restricted license issue "because of violations described in section 3(a)(3) hereof. . . ." The State asks us to determine whether "violations described in section 3(a)(3)" refers only to moving violations or whether such language also refers to any violations described in sections 3(a)(1) and (2) which have been added, in Marlett's case, to moving violations. This addition constitutes the ten or more convictions required in section 3(a)(3).

A statute which is specific, clear, and unambiguous must be held to mean what it plainly says. *Reome* v. *Edwards* (1948), 226 Ind. 229, 79 N.E.2d 389. The court may resort to statutory construction only when the statute itself and the legislative intent is obscure.

*Leach* v. *City of Evansville* (1937), 211 Ind. 444, 7 N.E.2d 207. Section 3 of IC 1971, 9-4-13-3 states in pertinent part that:

"Convictions for offenses enumerated in paragraphs (1) and (2) of this subsection, shall be taken and added to the convictions described in this paragraph for the purposes of this paragraph."

The only possible interpretation is that the statutory language refers not only to moving violations but also to convictions of driving while under the influence, reckless driving, and driving on a suspended license. The trial court is authorized to consider the same in issuing a restricted license under the terms of the habitual traffic offender statute.

Marlett has eight convictions which are described in section 3(a)(2); he has six driving while under the influence convictions and two reckless driving convictions. In addition, he has two speeding convictions and one automatic signal violation conviction, i.e., three convictions for violations "described in section 3(a)(3)." Thus, it would seem that for the trial judge to have characterized this matter as a certification "because of violations described in section 3(a)(3)" was not contrary to law. IC 1971, 9-4-13-10.[1]

The State alternatively submits that Marlett failed to establish that excessive commercial and business mileage may have been a contributing factor in his certification as an Habitual Traffic Offender. This requirement must be met under IC 1971, 9-4-13-10 as a prerequisite to obtaining a restricted license. In order to examine this contention, we would be required to determine the significance of the evidence already considered by the trial court. It is a firmly established principle that this court will not weigh evidence. *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621.

## II.

## License Reinstatement

The State's second and final argument is that the trial court had no power to grant Marlett a restricted license

1. IC 1971, 9-4-13-10 was amended in 1975 subsequent to Marlett's conviction to provide that if the defendant is adjudged an habitual traffic offender via section 3(a)(3) and if his driving record contains two or more convictions of driving while under the influence or of reckless driving, the trial court has no authority to grant a restricted license. IC 1971, 9-4-13-10 (Burns Code Ed. Supp. 1976).

since his license was already suspended at the time of his conviction as an Habitual Traffic Offender.

However, the provisions of IC 1971, 9-4-13-10 (Burns Code Ed.) give the trial court express power to enter such an order.[2] It reads in pertinent part as follows:

"If the court finds that the defendant is the same person named in the abstracts and that the defendant is an habitual traffic offender as defined in section 3 (a), the court shall so find and adjudge the defendant an habitual traffic offender, and shall by appropriate order direct the person so adjudged to surrender to the court his license to operate a motor vehicle, and by further order direct the person so adjudged not to operate a motor vehicle on the streets and highways of this state for a period of ten [10] years, unless in a case of a certification because of violations described in section 3 (a) (3) hereof, defendant establishes by a preponderance of the evidence, and the court specially finds that the defendant operates a motor vehicle for commercial or business purposes; that his mileage for such purpose is substantially in excess of the mileage of an average driver; and that such excessive mileage may have been a factor contributing to such certification. Upon such a finding, a court may place the defendant on probation for a period of not less than one [1] year nor more than three [3] years, or may order that the defendant's driving privileges be restricted to business or commercial uses, including driving to and from his place of employment, for any specific period not exceeding ten [10] years."

The State does not raise any question as to the special findings of the court concerning the excess mileage for business purpose of the appellee Charles Marlett, but only challenges the authority of the court to order restricted driving privileges.

The above quoted statutory language is clear and unambiguous in giving the trial court the right and authority to place an individual found to be an habitual traffic offender

2. IC 1971, 9-4-13-10 was amended in 1975 subsequent to Marlett's conviction so as to provide specifically that:

". . . if the defendant's license were suspended as determined by the bureau at the time of his adjudication as an habitual traffic offender . . . then the court may not . . . order that the defendant's driving privileges be restricted to business or commercial uses. . . ."

on probation, or in the alternative ordered restricted driving privileges. The statute in question, IC 1971, 9-4-13-10, *supra*, contains no limitations or restrictions on the trial court in granting restricted driving privileges to an individual who possesses a suspended driving license. Where a statute is clear and unambiguous the court must follow a literal interpretation of the statute. *Rogers* v. *Calumet National Bank of Hammond* (1938), 213 Ind. 576, 12 N.E.2d 261. Therefore, the order returning Marlett's previously suspended license was not contrary to law.

After reviewing both specifications of error presented by the State, we conclude that neither was contrary to law.

We affirm.

Hoffman, J., concurs; Garrard, J., concurs in part and dissents in part with opinion.

## OPINION CONCURRING IN PART AND
## DISSENTING IN PART

GARRARD, J.—IC 1971, 9-4-13-1 *et seq.* provides that driving privileges may be suspended for those found to be habitual traffic offenders. The scheme of IC 1971, 9-4-13-3 is to establish three categories based upon the gravity of the offense which may cause one to meet the definition of an habitual traffic offender. As the seriousness of the offense diminishes, more violations are required for one to be found an offender. Furthermore, a more serious offense may be counted with less serious offenses to constitute the required number of offenses. Yet nothing in the statute applicable to Marlett precluded the court from finding him guilty under subsection (a)(3) although he might also have been found guilty under subsection (a)(2). Since the record does support a finding under (a)(3), I concur with the majority that the decision was not contrary to law in this respect.

However, I disagree with the majority conclusion that the court could use the provisions of the habitual offender statute to restore to Marlett a driving privilege already validly suspended.

The purpose of the statute is to promote the public welfare by suspending the driving privilege of certain recidivist offenders. IC 1971, 9-4-13-10 in the form applicable to Marlett did permit the imposition of a restricted privilege rather than total suspension for the third (least serious) category of offense.

However, IC 1971, 9-4-13-18 further provides:

"Nothing contained in this chapter [9-4-13-1—9-4-13-18] shall be so construed as to repeal, modify or amend any other laws or parts of laws . . . relating to the operation . . . of motor vehicles, the licensing of persons to operate motor vehicles or providing penalties for the violation thereof; nor shall anything in this chapter be construed so as to preclude the exercise of regulatory powers of any division, agency, department or political subdivision of this state having the statutory power to regulate the operation and licensing of motor vehicles and the licensing of motor vehicle operators . . . ."

Accordingly, under IC 1971, 9-4-13-1 *et seq.* the court had power to impose an independent suspension of driving privileges based upon the recidivist status defined by the statute. It, also, had power to lessen the harshness of the penalty for those persons qualified under IC 1971, 9-4-13-10. It did not, however, under this statute, have the power to restore a driving privilege and nullify a prior sanction validly imposed under another act. It is undisputed that Marlett was the subject of a valid total suspension order at the time of these proceedings.

NOTE.—Reported at 358 N.E.2d 198.