STATE OF INDIANA EX REL. RALPH W. VAN NATTA, COMMIS-
MISSIONER OF THE BUREAU OF MOTOR VEHICLES *v.*
CHARLES V. MARLETT.

(No. 777S538. Filed July 28, 1977.)

*Theodore L. Sendak,* Attorney General, *James N. Schumacker,* Deputy Attorney General, for appellant.

*Steve Lustina,* of Gary, for appellee.

PIVARNIK, J.—This cause comes to us on a petition to transfer by the State of Indiana ex rel. Ralph W. Van Natta, Commissioner of the Bureau of Motor Vehicles, appellants and plaintiffs below. The decision below was in the Third District of the Court of Appeals in which Staton, P.J., and Hoffman, J. concurred, and Garrad, J., concurred in part and dissented in part with opinion. *State ex rel. Van Natta* v. *Marlett,* (1976) Ind. App., 358 N.E.2d 198. There, the Court of Appeals affirmed the trial court in granting restricted driving privileges to appellee, Charles Marlett. The trial court found that under Ind. Code § 9-4-13-1 through 18 (Burns 1971), Commissioner Van Natta had authority to grant a restricted driving license to the appellee. We grant transfer and vacate the decision of the Court of Appeals.

The appropriate sections of the statutes involved read as follows:

"9-4-13-3 [47-2336]. *Definitions.*—As used in this chapter [9-4-13-1—9-4-13-18], unless otherwise provided:

(a) The term "habitual traffic offender" means any person who, within a ten [10] year period, accumulates convictions of the number and type specified in paragraphs (1), (2), (3), and (4) of this subsection. In determining the ten [10] year period, at least one [1] of such offenses must occur on or after the effective date [September 1, 1972] of this chapter.

(1) Two [2] or more convictions, singularly or in combination, not arising out of the same incident, of the following offenses:

(A) Reckless homicide;

(B) Voluntary or involuntary manslaughter resulting from the operation of a motor vehicle;

(C) Failure of the driver of a motor vehicle involved in an accident resulting in death or injury to any person to stop at the scene of the accident and give the required information and assistance.

(2) Three [3] or more convictions, singularly or in combination, not arising out of the same incident, of the following offenses:

(A) Driving while under the influence of intoxicating liquor or narcotic or other habit-forming or dangerous, depressant or stimulant drugs;

(B) Operating a motor vehicle while his license to do so has been suspended or revoked;

(C) Operating a motor vehicle without a license to do so;

(D) Reckless driving;

(E) Drag racing or engaging in a speed contest in violation of law;

(F) Any offense punishable as a felony under the motor vehicle laws of Indiana, or any felony in the commission of which a motor vehicle is used;

(G) Failure of the driver involved in an accident resulting in property damage in excess of one hundred dollars [$100] to stop at the scene of the accident and give the required information or to otherwise fail to report the accident in violation of law.

Convictions for offenses enumerated in paragraph (1) of this subsection shall be taken and added to the convictions described in this paragraph for the purposes of this paragraph.

(3) Ten [10] or more convictions, singularly or in combination, not arising out of the same incident, of any moving traffic violation of the type required to be reported to the bureau of motor vehicles. Convictions for offenses enumerated in paragraphs (1) and (2) of this subsection, shall be taken and added to the convictions described in this paragraph for the purposes of this paragraph.

9-4-13-10 [47-2243]. *Hearings—Findings—Order—Probation—Costs.*—At the time and place designated in the order, the court shall hold a hearing upon the show cause order. If the court finds that the defendant is not the person named in the abstracts, or that he is not an habitual traffic offender as defined in section 3(a) [9-4-13-3(a)], the proceeding shall be dismissed. If the court finds that the defendant is the same person named in the abstracts and that the defendant is an habitual traffic offender as defined in section 3(a), the court shall so find and adjudge the defendant an habitual traffic offender, and shall by appropriate order direct the person so adjudged to surrender to the court his license to operate a motor vehicle, and by further order direct the person so adjudged not to operate a motor vehicle on the streets and highways of this state for a period of ten [10] years, unless in a case of a certification because of violations described in section 3(a) (3) hereof, defendant establishes by a preponderance of the evidence, and the court specially finds that the defendant operates a motor vehicle for commercial or business purposes; that his mileage for such purpose is substantially in excess of the mileage of an average driver; and that such excessive mileage may have been a factor contributing to such certification. Upon such a finding, a court may place the defendant on probation for a period of not less than one [1] year nor more than three [3] years, or may order that the defendant's driving privileges be restricted to business or commercial uses, including driving to and from his place of employment, for any specific period not exceeding ten [10] years. If the finding of the court is adverse to the defendant upon the hearing of the show cause order, costs shall be assessed against him. Upon a finding adverse to the defendant, the clerk of the court wherein the hearing is held, shall file with the bureau a copy of the court's order together with the defendant's license if the court has ordered its suspension. If the pro-

ceeding is dismissed, no costs shall be assessed against the defendant, and the clerk of the court wherein the hearing is held, shall file with the bureau a copy of the court's order dismissing the proceeding, which order shall state the ground or grounds, upon which the dismissal was based."

The facts giving rise to this action are as follows. On November 19, 1974, Charles V. Marlett was adjudged by the Lake Circuit Court to be an habitual traffic offender, and the court restricted his driving to business and commercial purposes for a period of one year. This adjudication was based on a driving record which included the following convictions: (1) on May 15, 1965, a conviction for speeding; (2) on February 19, 1966, a conviction for reckless driving; (3) on April 11, 1966, a conviction for reckless driving and a conviction and suspension for driving while under the influence; (4) on June 8, 1970, a conviction and suspension for driving while under the influence; (5) on October 26, 1974, a conviction and suspension for driving while under the influence and a conviction for an automatic signal violation; (7) on March 10, 1973, a conviction for reckless driving; (8) on June 14, 1973, a conviction and suspension for driving while under the influence and a conviction for speeding, and; (9) on May 5, 1974, a conviction and suspension for driving while under the influence and a conviction and suspension for driving while suspended.

It is apparent that Marlett had eight convictions described in section 3(a)(2) and three convictions for offenses described in section 3(a)(3), and was appropriately adjudged an habitual traffic offender under Ind. Code § 9-4-13-10 (Burns 1971). These sections provide that driving privileges may be suspended for those found to be habitual traffic offenders. The scheme of Ind. Code § 9-4-13-3 (Burns 1971), is to establish three categories based upon the gravity of the offense which may cause one to meet the definition of an habitual traffic offender. As the seriousness of the offense diminishes, more violations are required for one to be found an offender. Furthermore, a more serious offense may be counted with less

serious offenses to constitute the required number of offenses. Ind. Code § 9-4-13-10 (Burns 1971), provides that the court may order that the defendant be granted a restricted driving permit if:

(1) the adjudication was based on conduct described in 9-4-13-3 (a) (3) ;
(2) the defendant establishes that he operated his motor vehicle for commercial and business purposes and that his mileage was in excess of that of an average driver; and,
(3) that such excess mileage may have been a contributing factor in his certification by the Bureau of Motor Vehicles for adjudication as a habitual traffic offender.

Marlett contends that he was eligible for a restricted license because his certification as an habitual traffic offender was under section 3(a) (3) as required by 9-4-13-10. The State contends that the phrase "violations described in Section 3(a) (3)" refers only to moving violations and not the included violations described in 3(a) (1) and 3(a) (2).

Section 10 does not provide that the court is authorized to grant restricted driving privileges when the certification as an habitual traffic offneder is made pursuant to Section 3(a) (3), but provides this can be done when the certification is for violations *described* in Section 3(a) (3). An examination of the statute reveals that the last paragraph of Section 9-4-13-3(a) (2) (G) provides:

"Convictions for offenses enumerated in paragraph (1) of this subsection shall be taken and added to the convictions *described* in this paragraph for the purpose of this paragraph."

Further, 3(a) (3) provides that:

"Convictions for offenses enumerated in paragraphs (1) and (2) of this subsection shall be taken and added to the convictions *described* in this paragraph for the purposes of this paragraph."

Section 9-4-13-10 then follows with the same language and states that:

". . . unless in a case of a certification because of violations *described* in section 3(a)(3) hereof. . . ."

It thus does not appear to be a straining of interpretation of the legislature's intention that restricted privileges could be given to one convicted when his acts are those *described* in 3(a)(3), and not those brought into this section and added from 3(a)(1) and 3(a)(2) for purposes of the accumulative 10 to make him an habitual offender.

This is further fortified by the express language of the statute, which provides that the other two criteria involved are that a motor vehicle is used for commercial or business purposes, and that the mileage for such purposes is substantially in excess of the mileage of an average driver and such excessive mileage may have been a contributing factor to such certification.

The State's position is well-taken: to interpret this statute otherwise would be to hold that the person could not receive restricted driving privileges if he was convicted under (a)(1) and (a)(2) of driving under the influence of intoxicating liquor, reckless driving and other more serious acts, but that such privilege could be given if those acts were combined "with moving violations described in (a)(3)."

A statute which is specific, clear and unambiguous must be held to its plain meaning. *Reome* v. *Edwards,* (1948) 226 Ind. 229, 79 N.E.2d 389. Consideration must be given to the consistency of all sections of the statute to each other and to the logical meaning and definition of the language used in the statute. Here, Marlett was not certified an habitual offender for ten violations described in 3(a)(3). He has eight convictions which are described in 3(a)(2) and only three were those described in 3(a)(3). He has six driving while under the influence convictions and two reckless driving convictions.

In view of our decision here the trial court's action in granting Marlett a restricted license, while his license was

already suspended at the time of his conviction as an habitual traffic offender, is moot and we need not decide that issue.

We find that the trial court had no authority to grant the restricted driving license to the defendant under Ind. Code § 9-4-13-10 (Burns 1971), and accordingly remand this cause to the trial court with orders to enter a judgment consistent with this opinion.

All Justices concur.

NOTE.—Reported at 365 N.E.2d 763.