Albert J. PALMOWSKI et al., Appellants (Plaintiffs Below),

v.

The TOWN OF NEW CHICAGO et al., Appellees (Defendants Below).

No. 3–1079A291.

Court of Appeals of Indiana, Third District.

Oct. 28, 1980.

Rehearing Denied Dec. 8, 1980.

Steven W. Handlon, Rice, Rice, Handlon & Anderson, Portage, for appellants.

Patrick J. Galvin, Galvin, Galvin & Leeney, Hammond, for appellees.

HOFFMAN, Judge.

This appeal arises from a class action suit instituted by the police officers of New Chicago, Indiana against the members of the Town Board of the Town of New Chicago and the Commissioners of the Town of New Chicago Police Commission (hereinafter referred to as the "Town"). The only issue before this Court on appeal is whether or not the policemen are entitled to the same statutory minimum salary as that paid to policemen of cities of the fifth class. Summary judgment on this issue was granted in favor of the Town.

The parties have stipulated that the Town has a population of between 2,000 and 2,500 persons. The Town's population is therefore within the parameters of the population of a fifth-class city, as defined by IC 1971, 18-2-1-1 (Burns Code Ed.). However, the Town has never had an election to become classified as a city pursuant to IC 1971, 18-3-2-1, and therefore, it remains a town and not a city.

The appellants' case is based on an argument involving two separate Indiana statutes. The first statute, IC 1971, 19-1-5-1 (Burns Code Ed.) establishes the salaries for policemen in fifth-class cities. All parties agree that this statute does not apply directly to the Town of New Chicago. A statute applicable to a fifth-class city is not applicable to a town merely because the town has the same population as a fifth-class city. *Penrod et al. v. Hoover et al.* (1957), 128 Ind.App. 334, 146 N.E.2d 817.

Plaintiffs do contend that the minimum wages guaranteed by IC 1971, 19-1-5-1 to city policemen must serve as a *standard of comparison* for determining minimum salaries for employees of a town metropolitan police commission. To reach this conclusion, the plaintiff policemen offer a unique interpretation of two sections of the statute which authorizes and regulates town boards of metropolitan police commissioners. The creativity of their argument is appreciated but, nonetheless, their reasoning is unpersuasive. The statutes are clear and unambiguous. No rules of statutory construction or judicial investigation of legislative intent are necessary to an understanding of this law.

The first relevant section of the town board authorization statute reads, in part:

"Such commissioners shall fix and determine the compensation to be paid to members of the police force and other employees in such amount as will be just and reasonable and in compliance with any law of the state of Indiana governing such compensation or salary."

IC 1971, 19-1-25-2.

The policemen maintain that the phrase "any law of the state of Indiana governing such compensation or salary" requires the

commissioners to comply with IC 1971, 19–1–5–1. That statute, discussed above, clearly applies only to cities, not towns. The policemen ignore the plain meaning of the word "governing." The commissions are required to comply with any state law which *governs* the salaries of town policemen. Since IC 1971, 19–1–5–1 does not govern town policemen, the commissioners need not comply with the statute. This conclusion is obvious by a simple reading of the plain language of the statute.

The plaintiffs also rely on a second section of the same statute, which reads, in part:

"The members of such police departments shall be entitled to all the rights, powers and privileges granted by the laws of the state to any member of police departments including all the rights, privileges and benefits under the police pension fund as provided for in chapter 51 of the Acts of 1925 of the General Assembly of the state of Indiana and all acts amendatory thereof and supplemental thereto." IC 1971, 19–1–25–4.

One of the rights to which the plaintiffs assert they are entitled is the right to minimum compensation. This assertion is correct. The policemen then contend that their minimum compensation should be determined by using IC 1971, 19–1–5–1 as a standard of comparison to determine the appropriate level of minimum compensation. On this issue, the argument must fail. Merely because the Town of New Chicago has a population comparable to that of a city of the fifth class, the Town Board is not required by law to comply with the statutes applicable to those cities.

Further evidence of the fact that the minimum wage statute has no application to towns is the often cited maxim "expressio unius est exclusio alterius." This maxim was discussed in the case of *Shupe v. Bell et al.* (1957), 127 Ind.App. 292, at 298, 141 N.E.2d 351, at 354:

"One of the oldest maxims of the law is, 'The express mention of one person or thing is the exclusion of another.' Warton's Legal Maxims, p. 11. Otherwise stated, 'What is expressed makes what is silent to cease.' Coke Litt., 210a; *Woodford et al. v. Hamilton et al.* (1894), 139 Ind. 481, 39 N.E. 47. 'When the law is in the affirmative that a thing should be done by certain persons or in a certain manner, this affirmative manner contains a negative that it shall not be done by other persons or in another manner.' 26 Am. and Eng. Ency. Law, (2nd ed.) 605, and cases cited therein; *State ex rel. v. Home Brewing Co.* (1914), 182 Ind. 75, 95, 105 N.E. 909."

Had the Legislature intended to make the minimum wage law applicable to policemen who are employed by a town, it could have done so by making that express provision. By failing to do so, towns are excluded from the scope of this statute.

For these reasons, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I respectfully dissent.

Contrary to the majority's conclusion, I am persuaded that IC 1971, 19–1–25–2 is ambiguous. A reading of the pertinent portions of this statute leaves me in doubt as to which law should be referred to by the Town Board of Police Commissioners in setting the town police officers' salaries.

In IC 1971, 19–1–5–1, the legislature imposed minimum salary provisions for fire and police personnel on the various classes of cities. Enacted in 1947, it provided:

"Minimum compensation of firemen and policemen.—In cities of the first, second and third class the minimum compensation of firemen and policemen shall be five hundred dollars [$500] per month; in cities of the fourth class, the minimum compensation shall be four hundred and fifty dollars [$450] per month; and *in cities of the fifth class, the minimum compensation shall be four hundred dollars [$400] per month.*" (Emphasis added.).

IC 1971, 19–1–25–2 deals, in part, with the compensation to be paid town police officers. Pertinent portions are as follows:

"The board of metropolitan police commissioners of any town of this state shall have the power to appoint, subject to the approval of the town board, as many persons as necessary to serve on the police force of such town, one [1] of whom shall be appointed to serve as the chief of the police force . . . ."

\* \* \* \* \* \*

"*Such commissioners shall fix and determine the compensation to be paid to members of the police force and other employees in such amount as will be just and reasonable and in compliance with any law of the state of Indiana governing such compensation or salary . . . .*" (Emphasis added.).

The rights and duties of town police officers are set forth in IC 1971, 19–1–25–4:

"Application of general police department laws.–The operation, management and control of such police departments shall be governed by the provisions of the laws of the state applicable to the management and control of metropolitan police departments where such laws are not inconsistent with the provisions of this act [19–1–25–1–19–1–25–4]. The members of such police departments, as provided for in this act, shall have the authority to exercise all powers granted to members of police departments by the laws of the state. *The members of such police departments shall be entitled to all the rights, powers and privileges granted by the laws of the state to any member of police departments including all the rights, privileges and benefits under the police pension fund* as provided for in chapter 51 of the Acts of 1925 of the General Assembly of the state of Indiana and all acts amendatory thereof and supplemental thereto." (Emphasis added.).

Both IC 1971, 19–1–25–2 and 4 were enacted in 1951.

It is well settled that the latest expression of the legislature on a subject is controlling. *Connell v. City of Logansport*

(1979), Ind.App., 397 N.E.2d 1058, 1061. Consequently, my central concern here is not with the expression and intent of the legislature in enacting IC 1971, 19–1–5–1 during its 1947 session, but rather with its concerns four years later. Did it intend to extend the minimum wage provisions to town police officers via the provisions of IC 1971, 19–1–25–2 and 4?

In examining the language of these statutes, I am mindful that it is the duty of this Court to effectuate the meaning of the language employed by the legislature, where that meaning is unambiguously expressed. *State ex rel. VanNatta v. Marlett* (1977), 266 Ind. 571, 365 N.E.2d 763, 766. When an ambiguity or vagueness exists in a statute, however, it is the responsibility of this Court to invoke rules and principles of statutory construction in an effort to ascertain and give effect to the intent of the legislature. *Indiana State Highway Commission v. White* (1973), 259 Ind. 690, 291 N.E.2d 550, 553; *State ex rel. Bynum v. LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 291 N.E.2d 355, 356.

The language employed by the legislature in IC 1971, 19 1 25 2, is, on its face, ambiguous. According to the language contained in the statute, the Town Board of Police Commissioners is empowered to fix town police officers' salaries at a figure that is "just and reasonable and in compliance with any law of the State governing such compensation or salary." The power of the Commissioners is thus not absolute. Whatever amount the Commissioners determine to be "just and reasonable" must comply with "any law . . . governing such compensation or salary."

It is well settled that all language used in a statute is deemed to have been employed intentionally by the legislature so as to effect the purposes of the statute. *Combs v. Cook* (1958), 238 Ind. 392, 151 N.E.2d 144, 147; *Engle v. City of Indianapolis* (1972), 151 Ind.App. 344, 279 N.E.2d 827, 838. Equally well established is the corollary proposition that words or clauses in a statute will be treated as meaningless surplusage only when no other course of construc-

tion is available. *Kidwell v. State* (1967), 249 Ind. 430, 230 N.E.2d 590, 592. In light of these principles, I am compelled to conclude that the legislature's use of the ambiguous phrase "in compliance with any law . . . governing such [1] compensation or salary" refers to IC 1971, 19–1–5–1, for that is the only other law regarding police officers' salaries or compensation in the municipal subdivisions of this state.

Consequently, to hold that the phrase–at–issue did not refer to IC 1971, 19–1–5–1 would render the statutory language meaningless, a reference to nothing. It is not for this Court to attribute such artless draftsmanship to the legislature.

Our policy to effectuate the language of a statute whenever possible is more than a mere maxim of statutory construction. This rule serves to protect a fundamental concept of government which is embodied in our Federal and State Constitutions–that the three branches of government are vested with separate and independent powers. It is indeed a drastic measure for this Court to hold that the legislature, our law–making branch, intended nothing by the language which it included in the statute. It is, consequently, an interpretation invoked only when no other course of construction is available. *Kidwell v. State, supra.*

I find additional and compelling support for this conclusion in the language contained in IC 1971, 19–1–25–4. My reliance on the language contained therein is justified by the long–standing principle that the meaning of a statute could be ascertained by reference to other portions of the same Act. *State v. Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761, 764.

In IC 1971, 19–1–25–4, the legislature unequivocally indicated its intention that town police officers enjoy not only the same "authority" and "powers" as their colleagues in other police departments, but also the same "rights" and "privileges."

The phrase "rights, powers, and privileges" is ambiguous. When examined in its context, however, the legislature's intentions are clear. Immediately subsequent to the phrase appears the words "including all the rights, privileges, and benefits under the police pension fund" established for city police officers in 1925.

The meaning of a doubtful word is to be ascertained by reference to the meaning of the words associated with it.[2] *Bertrand v. Smeekens* (1973), 156 Ind.App. 572, 298 N.E.2d 25, 28. Here, the meaning of "rights . . . and privileges" must necessarily be interpreted to encompass minimum wage guarantees, for minimum wage protections and pension benefits are both forms of compensation extended to police by our legislature. Minimum wage guarantees, like pension benefits, are designed to attract competent persons to local law enforcement positions and thereby improve the quality of that public service. *See State v. Kerns* (1939), 215 Ind. 515, 20 N.E.2d 514, 517.

It is the State's interest in the general public welfare which empowers it to legislate in the area of local police protection. As our Supreme Court explained in *Arnett v. State ex rel. Donahue* (1907), 168 Ind. 180, 80 N.E. 153:

> "The maintenance of peace and quiet and the suppression of crime and immorality are matters of general interest, and to the attainment of these ends the cities and towns of the state are largely subject to its control. As the commonwealth is a unit in respect to its interest in such matters, the regulation thereof is a prop-

---

1. The words and phrases employed by the legislature are to be construed in their plain and ordinary sense, unless a technical meaning has been supplied by the legislature. IC 1971, 1–1–4–1. "Such" is defined in The Random House Dictionary of the English Language p. 1420 (1969), as "of the kind, character, degree, etc. of that indicated or implied" and "of the particular kind or character." The legislature's use of the word "such" within its context is ambig-uous. It might reasonably be interpreted to indicate only other laws (of which there are none) relating to the wages earned by police officers of towns, or, in its broader sense, to refer to police salary laws of a like kind or character–such as city police officers.

2. The rule of statutory construction is known as "*noscitur a sociis.*" *Bertrand v. Smeekens, supra.*

er subject of legislation, and whether cities and towns in respect to these matters shall have a centralized or decentralized form of government is a political question, with which the courts have nothing to do. Matters of general interest are not necessarily required to be submitted to the judgment and discretion of the people of the locality...."

In exercising its power to regulate police officers of cities, the legislature established a minimum salary schedule which is graduated according to population of the employing city.[3] IC 1971, 19–1–5–1. It cannot be doubted that the larger minimum wage granted to police officers of more populated areas reflects the legislature's determination that inherent to more populous areas is a need for more competent and effective law enforcement.

New Chicago, while not incorporated as a fifth class city, has the requisite number of residents to attain that legal status. Whether formally designated as a "city" or "town", its residents and police officers are exposed to the same threats to public order and safety which beset any area with the same general population.

To hold that New Chicago's police officers, who confront the same dangers and duties of their fifth class colleagues, are not entitled to the same minimum wage because of the area's legal status would undermine the public interest which the legislature has sought to protect in its regulation of local police forces. In that respect, the statutes–at–issue relate to the same general subject matter and are *in pari materia*. My construction is consistent with the rule that statutes *in pari materia* should be construed so as to produce a harmonious system. *Economy Oil Corp. v. Indiana Dept. of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215, 218.

For these reasons, I conclude that the legislature did intend to incorporate the minimum wage provisions of IC 1971, 19–1–5–1 into IC 1971, 19–1–25–2 and 4. As I ascertain the intent of the legislature, however, that incorporation is limited in extent to those "towns" which have attained a population commensurate with a class of cities outlined in IC 1971, 18–2–1–1.[4]

Here, the parties stipulated that the Town of New Chicago has the population of a fifth class city. Its full–time police officers are, therefore, entitled to the minimum wage of $400.00, granted by statute to fifth class city police officers.

For these reasons, I respectfully dissent and would reverse the judgment of the trial court.

---

**3.** For example, fifth class cities (population of 2,000 to 10,000) are required to pay their police officers a salary of at least $400.00 per month. Fourth class cities (population of 10,000 to 20,000 persons) are required to pay their police officers a minimum wage of $450.00 per month.

**4.** While a town may obtain the legal status of fifth class city once its residents number 1,500 or more (IC 1971, 18–3–3–1) I would limit the effect of this Court's holding to fifth class cities as areas of 2,000 to 10,000 persons, as per IC 1971, 18–2–1–1. It is with reference to the terms of that statute that the legislature determined the minimum salary amounts codified in IC 1971, 19–1–5–1.