**Ivan E. WOOLEY, Petitioner-Appellant,**

v.

**COMMISSIONER OF MOTOR VE-
HICLES of the State of Indiana,
Defendant-Appellee.**

**No. 1–185A2.**

Court of Appeals of Indiana,
Third District.

June 11, 1985.

Rehearing Denied July 17, 1985.

William R. Clifford, Clifford & Gotshall, Anderson, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Petitioner-appellant, Ivan E. Wooley (Wooley) appeals a judgment of the Rush Circuit Court dismissing his petition for judicial review and probationary operator's license under IND. CODE 9–12–2–5(b).

We reverse.

### DISCUSSION AND DECISION

Wooley was adjudicated a habitual traffic offender on March 10, 1978, under IND. CODE 9–4–13–1 *et seq*, enacted in 1972, and his license was suspended for ten years. IND. CODE 9–4–13–3 defines a habitual traffic offender in three categories: (a)(1) as a person who had committed two very serious offenses involving death; (a)(2) as a person who had committed three offenses in a combination of driving under the influence, reckless driving, operating a motor vehicle without a license or while suspended, criminal recklessness, speed contests or leaving the scene; and (a)(3) as a person who had committed ten less serious miscellaneous offenses. Wooley's habitual offender category was (a)(2); two offenses of driving under the influence, and one driving while suspended. Under that act, his license was suspended by the trial court. Under IND. CODE 9–4–13–10, the court was specifically prohibited from issuing a probationary license for subsection (a)(2) offenses, but could issue a probationary license under subsection (a)(3).

In 1983, under P.L. 127 which specifically amended IND. CODE 9–4–13–3 and 4, definitions of a habitual traffic offender were maintained in the same three categories, but power to suspend was transferred to the Commissioner of the Bureau of Motor Vehicles. Suspension in category (a)(3) was lowered from ten to five years, and judicial review was created.

In 1984, the legislature reenacted the habitual traffic offender act under IND. CODE 9–12–1–1 *et seq.* (P.L. 79). It nevertheless retained the aforesaid three categories defining a habitual traffic offender, but termed him a "habitual violator". Subsection (b) retained the former (a)(1) definitions where the person committed two offenses involving death. Subsection (c) retained the (a)(2) definition involving three offenses, in combination, of driving under the influence, operating a motor vehicle without ever having had a license or while suspended and reckless driving, criminal recklessness, speed contests, leaving the scene, plus other felonies. Subsection (d) retained the definition of ten miscellaneous offenses. It continued the administrative suspension, judicial review, probationary licenses under subsection (d), formerly (a)(3), but significantly, as applicable here, it extended the probationary licenses, formally denied, to category (a)(2), now subsection (c), after 5 years of demonstrated reformation. The probation section, IND. CODE 9–12–2–5 provides:

"(a) If a court finds that a person:
(1) Is an habitual violator under IC 9–12–1–4(d);
(2) Has not been previously placed on probation under this section by a court;
(3) Operates a vehicle for commercial or business purposes, and his mileage for such purposes:
(A) Is substantially in excess of the mileage of an average driver; and
(B) May have been a factor that contributed to the person's poor driving record; and
(4) Does not have:
(A) A judgment for any violation enumerated in IC 9–12–1–4(b); or

(B) Three (3) or more judgments (singularly or in combination and not arising out of the same incident) of the violations enumerated in IC 9–12–1–4(c);
the court may place the person on probation in accordance with subsection (c).

(b) If a court finds that a person:
(1) Is an habitual violator under IC 9–12–1–4(c);
(2) Has not been previously placed on probation under this section by a court;
(3) Does not have a judgment for any violation listed in IC 9–12–1–4(b);
(4) Has had his driving privileges suspended under this chapter for at least five (5) consecutive years; and
(5) Has not violated the terms of his suspension by operating a vehicle; the court may place the person on probation in accordance with subsection (c). However, if the person has any judgments for operation of a vehicle while intoxicated or with at least ten-hundredths percent (0.10%) alcohol in the blood, the court, before it places a person on probation under subsection (c), must find that the person has successfully fulfilled the requirements of a rehabilitation program certified by the division of addiction services of the state department of mental health.

(c) Whenever a court places an habitual violator on probation, the court:
(1) Shall record each of its findings under this section in writing;
(2) Shall obtain the person's driving license or permit and send it to the bureau;
(3) Shall direct the person to apply to the bureau for a restricted driving license;
(4) Shall order the bureau to issue the person an appropriate license;
(5) Shall place the person on probation for a fixed period of not less than three (3) years and not more than ten (10) years;
(6) Shall attach restrictions to the person's driving privileges, including restrictions limiting the person's driving to:

(A) Commercial or business purposes or other employment related driving;

(B) Specific purposes in exceptional circumstances; and

(C) Rehabilitation programs; and

(7) May impose other appropriate conditions of probation. [P.L.79–1984, Sec. 1.]"

The only significant difference between the 1972 Act and the 1984 Act is the administrative suspension by the Commission, judicial review, and the creation of a probationary license under category (c), formerly (a)(2), which had previously been prohibited.

However, Acts of 1984, P.L. 79, contained the following saving clause:

"SECTION 2. IC 9–4–13 is repealed. SECTION 3. (a) The repeal of IC 9–4–13 by SECTION 2 of this act does not affect any:

(1) rights of liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

before April 1, 1984. The rights, liabilities, and proceedings are continued, and punishments, penalties, or forfeitures shall be imposed and enforced under IC 9–4–13 as if this act had not been enacted.

(b) All crimes committed before April 1, 1984, under IC 94–4–13 shall be prosecuted and remain punishable under IC 9–4–13 as if this act had not been enacted.

(c) Notwithstanding subsections (a) and (b) of this SECTION, any period of suspension of a person's driving privileges that is imposed under IC 9–12, as added by SECTION 1 of this act, shall be construed to supersede any period of suspension that is imposed under IC 9–4–13 and shall not be added to that period.

SECTION 4. Because an emergency exists, this act takes effect April 1, 1984."

Wooley filed his petition on June 21, 1984, claiming the benefit of IND. CODE 9–12–2–5(b). The Commissioner and the Prosecuting Attorney respondents filed their motion to dismiss asserting that because of the saving clause, Wooley was not entitled to the benefit of that section as the liability, penalties, punishments, forfeitures and proceedings had been completed under IND. CODE 9–4–13, and so IND. CODE 9–12–2–5(b) has no application to those but only to habitual offender determinations occurring after April 1, 1984. The trial court sustained the motion to dismiss.

As stated in the briefs, the question to be determined is whether the General Assembly intended that those individuals whose driving privileges had been suspended prior to April 1, 1984, could avail themselves of the remedy provided in IND. CODE 9–12–2–5(b). The state relies on the language of the saving clause, and the proposition in law that where a person is sentenced for a crime, the penalty for which is later reduced, he is not entitled to the benefit of the lesser penalty. *Watford v. State*, (1979) 270 Ind. 262, 384 N.E.2d 1030. Wooley likewise argues statutory construction and claims that the intent of the legislature was to enact a law, ameliorative in nature, to blunt the economic hardship of a 10 year suspension, and would apply to persons under existing suspension as well as persons suspended after April 1, 1984.

The rules of construction applicable to statutes generally apply to the construction of statutory amendments, and the divining of the intention of the legislature is the primary objective in construction of statutory amendments. Amendments are to be construed together with the original act to which they relate as constituting one law, as a part of the original act, and also with other statutes on the same subject or relative subjects whether in force or repealed. *Gingerich v. State*, (1950) 228 Ind. 440, 93 N.E.2d 180. The provisions of the amending act and the amended act are to be harmonized so far as possible. *Huff v. Fetch*, (1924) 194 Ind. 570, 143 N.E. 705.

Another rule of statutory construction is that when the legislature enacts an amendatory statute it is presumed to have intended to change the law. *Ware*

*v. State*, (1982) Ind.App., 441 N.E.2d 20. Also, where there is an irreconcilable conflict between the body of the act and the saving clause, the saving clause is to be rejected as void and of no effect. *Shutt v. State ex rel. Cain*, (1909) 173 Ind. 689, 89 N.E. 6. In *Shutt*, a prior statute gave the legislature the power to appoint a state house engineer. However, a later statute transferred that power to the superintendent of public buildings and property, and contained a clause which provided "nothing contained in this act shall apply or in anywise affect the office and the manner of electing the incumbent, his duties and compensation, remain and continue as now fixed by law". 173 Ind. at 692. The court struck down the saving clause under the rule enunciated above.

 We are of the opinion that the purpose of the saving clause here was to give continuity to the habitual traffic offender act starting in 1972, so that persons whose habitual offender status had been determined prior to April 1, 1984, and persons who were apprehended driving while suspended under the prior law, would not escape sanctions by virtue of any revision or reenactment of the law. The only substantive change in the 1984 law over the 1983 and 1972 laws was to make a person suspended under category (c), previously (a)(2), eligible for a probationary license. It is clearly the intent of the legislature to mitigate the economic effect of suspensions upon the habitual offender and their family by permitting them to operate a motor vehicle to earn a livelihood after a five-year period in which they have demonstrated reformation. Insomuch as IND. CODE 9–12–2–1, *et seq*, is merely a continuation without any essential policy change of previous habitual traffic offender acts, it strains logic to assume that the legislature would bestow their largess only upon those who had been adjudicated a habitual traffic offender after April 1, 1984, yet deny the same to those already economically deprived because of the loss of driving privileges. The body of the act reflects no such intent, and such can only be inferred by construction of the saving clause, which, if irreconcilable, must fall. Our view is further bolstered by the emergency clause contained in the act. If the legislature intended to delay the practical operation of IND. CODE 9–12–2–5 until 1989, it would not appear that they would have attached the language of emergency.

For the above reasons, we hold that IND. CODE 9–12–2–5(b) is applicable to persons determined to be habitual traffic offenders prior to April 1, 1984, and the trial court is reversed and is directed to overrule the motion to dismiss and proceed in accordance with the statute.

Judgment reversed.

RATLIFF, P.J., and ROBERTSON, J., concur.