**Gregory W. CLARK, Appellant (Petitioner Below),**

v.

**COMMISSIONER, BUREAU OF MOTOR VEHICLES, State of Indiana, Appellee (Respondent Below).**

No. 2–1185–A–353.

Court of Appeals of Indiana, Second District.

Nov. 6, 1986.

Donald E. Snow, Matthew F. Purol, Bradford, Snow & Bean, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Petitioner-appellant Gregory W. Clark (Clark) appeals the trial court's denial of his petition for a probationary restricted driver's license, pursuant to I.C. 9–12–2–5(a) (Burns Code Ed.Supp.1986.)[1]

The appeal before us does not challenge the determination that Clark is a habitual traffic offender. It attacks only the review court's failure to place him upon probation and to permit issuance of a restricted driver's license.

■ The sole issue presented is whether the trial court erred in denying Clark's petition based upon its findings that although Clark operates a vehicle for commercial or business purposes, his mileage for such purposes is not substantially in excess of the mileage of an average driver.

We reverse.

The facts most favorable to the denial of the petition reflect that Clark committed eleven traffic violations between 1977 and 1984. From 1977 through 1981, Clark was employed as a traveling salesman for Photo Corporation of America and was required to drive between 75,000 and 100,000 miles per year for business purposes. During 1982 Clark was employed by Combined Insurance Company as a sales representative and was required to drive more than 50,000 miles per year for business purposes. From 1983 to 1985, Clark was employed as a car salesman by three different automobile dealerships. Prior to the suspension of his license, Clark worked at Jerry Alderman Ford where he was required to drive approximately 65 miles per week for business purposes which included demonstration drives and errands.

On May 8, 1985, the respondent-appellee, the Commissioner of the Indiana Bureau of Motor Vehicles (Commissioner) notified Clark that his traffic conviction record established that he was a habitual traffic violator and that his driver's license would therefore be suspended from June 24, 1985, to June 24, 1990.

On June 18, 1985, Clark filed a petition requesting the court to review the administrative determination and to grant him a probationary restricted driver's license. An evidentiary hearing was held on June 27, 1985, after which the trial court entered its amended[2] findings of fact, conclusions of law and judgment. The trial court concluded that Clark did not qualify for a restricted driver's license because, although he had operated a vehicle for commercial purposes since 1977, his mileage for those purposes was not substantially in excess of the mileage of an average driver for the two-year period during which he

1. Indiana Code 9–12–2–5(a) provides in pertinent part:
   "(a) If a court finds that a person:
   (1) Is an habitual violator under IC 9–12–1–4(d);
   (2) Has not been previously placed on probation under this section by a court;
   (3) Operates a vehicle for commercial or business purposes, and his mileage for such purposes;
   (A) Is substantially in excess of the mileage of an average driver; and
   (B) May have been a factor that contributed to the person's poor driving record; and
   (4) Does not have:
   (A) A judgment for any violation enumerated in IC 9–12–1–4(b); or
   (B) Three [3] or more judgments (singularly or in combination and not arising out of the same incident) of the violations enumerated in IC 9–12–1–4(c);
   the court may place the person on probation in accordance with subsection (c)."
   Subsection (c) requires the court to attach restrictions limiting the probationer's driving to:
   "(A) Commercial or business purposes or other employment related driving;
   (B) Specific purposes in exceptional circumstances; and
   (C) Rehabilitation programs...."

2. The court sustained in part Clark's motion to correct errors and amended its findings of fact to reflect that 1) "if granted a probationary license, [Clark] would again be employed with requirements to operate his employer's vehicle for a business or commercial purpose" and 2) Clark was required to drive his employer's vehicles "for the indirect business purpose of driving said vehicle everywhere he travels." Record at 55–56.

was engaged in his current employment and which immediately preceded his license suspension.

Clark argues that the trial court misinterpreted I.C. 9–12–2–5(a) (Burns Code Ed. Supp.1985) because it improperly considered his current and his prospective mileage for commercial or business purposes and focused upon whether such mileage is and would be above average. Clark cites *State ex rel. VanNatta v. Marlett* (1977) 266 Ind. 571, 575, 365 N.E.2d 763, 765, for the proposition that it is only a habitual traffic offender's *past* mileage that is relevant. In support of this assertion, Clark relies upon use of the past tense in the *Marlett* decision stating that a defendant may be granted a restricted driving permit if he "establishes that he *operated* his motor vehicle for commercial and business purposes and that his mileage *was* in excess of that of an average driver...." *Id.* (Emphasis supplied.)

The review court specifically found that the 60,000 plus miles annually driven by Clark between 1977 and June, 1983, was for business and commercial purposes and may have contributed to his violations record. The court also found that as of June 24, 1985, the date of suspension, Clark needed a driver's license for commercial or business purposes. The sole basis for the refusal to place Clark upon probation, however, was a finding that the mileage anticipated for Clark's present and future business purposes would not be substantially in excess of that of an average driver.

The focus of the review court and the basis of its determination reflect an interpretation of the statute which we find to be in error.

■■■ In *State ex rel. VanNatta v. Marlett* (1976) 3d Dist., 171 Ind.App. 559, 358 N.E.2d 198, the Court of Appeals noted that no question was presented with reference to the trial court's special finding con-

cerning the excess mileage for business purposes. Upon transfer, our Supreme Court reversed and held that the trial court did not have authority to issue a restricted license because the ten offenses underlying the habitual offender certification did not fall within the Section 3(a)(3) classification. *Marlett, supra,* 365 N.E.2d 763. Our Supreme Court did not address the commercial or business mileage question. It used the word "operated" instead of "operates" with reference to the requirement of vehicle operation for business purposes and mileage in excess of an average driver. We conclude that Justice Pivarnik's use of the past tense focuses attention upon the driving conduct which led to the habitual offender determination and not upon the economic or hardship aspect of a probation determination. To be sure, probation and restricted driving privileges may not be granted unless excess mileage for business purposes are demonstrated as a possible cause of the habitual offender certification, but that is not to say that the court must also determine that excess mileage will continue to be driven in the same commercial or business pursuits. Such assessment of the future would be speculative at best. Suffice it to say that with regard to the present and future, the court need determine only that an applicant for probation has demonstrated a real need for driving privileges for business or commercial purposes and that the lack of a permit would constitute an unreasonable hardship upon the applicant and/or his family. *See Wooley v. Commissioner of Motor Vehicles* (1985) 3d Dist.Ind.App., 479 N.E.2d 58 at 61. Although the need to commute to and from a place of employment would likely not in itself constitute basis for probationary driving privileges, it need not be excluded from the consideration of the trial court in determining the need for vehicle use in the actual business or commercial endeavor.[3]

---

3. When I.C. 9–4–13–10 was enacted in 1972 it specifically contemplated that restricted driving privileges for commercial or business use could include "driving to and from his place of em-

ployment." That provision remained intact until repealed in 1983. The present replacement provision, I.C. 9–12–2–5 states the contemplation in terms of (c)(6)(A) "Commercial or busi-

Our research has disclosed no statute comparable to I.C. 9–12–2–5(a) in any of the other 49 states or the District of Columbia. However, a fair reading of our statute indicates that the General Assembly mistakenly mixed its tenses in stating the focus of the determination to be made. Although Section (a)(3) refers to both operation of a vehicle and the mileage driven for commercial or business purposes in the present tense, the provision also refers to that operation and business mileage as having been a factor in the poor driving record. It is difficult to understand how present or future operation or driving mileage could contribute to a past driving record. In any event, our judicial duty compels us to interpret the statute in such a manner as to give effect to the legislative intent and to harmonize or reconcile seemingly inconsistent or unclear provisions.

We have no doubt that I.C. 9–12–2–5 was intended to ameliorate the economic harshness of a license suspension upon one whose livelihood depends *presently* upon the operation of a vehicle if the past poor driving record of the individual may have been partially a result of business or commercial mileage driven in excess of that driven by an average driver.

■ This leads us to conclude that the "excessive mileage" consideration is applicable only to the past driving experience of the petitioner but that probation might be denied to a person who acquired a poor record while driving commercial or business mileage substantially in excess of that driven by an average driver, if that driver does not *now* need a driver's license for commercial or business purposes.

The determination to place a person upon probation, or not, is vested in the sound discretion of the trial court. That discretion, however, must be exercised in terms of the applicable law. Quite obviously, the trial court did not have the benefit of today's construction of the statute involved. Nevertheless, we are compelled to reverse the judgment and to remand the matter for

ness purposes or other employment related driv-

further proceedings consistent with this opinion.

BUCHANAN, C.J., and SHIELDS, J., concur.

